J-S70030-18

2019 PA Super 74

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRECE LIGON | : | |
| | : | |
| Appellant | : | No. 139 EDA 2018 |

Appeal from the PCRA Order December 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001138-2012

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.: **FILED MARCH 11, 2019**

Tyrece Ligon, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Ligon claims trial counsel was ineffective for failing to object to the prosecutor's allegedly impermissible remarks made during closing arguments to the jury. We affirm.

The PCRA court accurately set forth the facts of this case in its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) and we do not reiterate them in their entirety for purposes of this appeal. Instead, we note the following factual background relevant to Ligon's instant PCRA petition, as gleaned from the PCRA court opinion. On January 18, 2011, Howard Filmore ("the victim") had an argument with his long-time girlfriend, Linda Burrell and asked her to vacate their shared residence. In response,

Burrell sought the help of her two adult daughters, Latrice Burrell and Shamira Stanfield, in confronting the victim. Ligon, the instant Appellant, is the boyfriend of Latrice Burrell. Ligon drove both daughters to the scene and an altercation ensued. Shamira struck the victim with an aluminum baseball bat and Ligon shot the victim in the back as he attempted to flee.

Police Officer Charles Nelson transported the victim to the hospital where he identified Ligon as the shooter and provided a written statement regarding exactly what happened during the altercation. Further, after he was released from the hospital and recovering at home, the victim was shown a photographic array by police and he once again was able to identify Ligon as the shooter. The victim also identified Ligon as the shooter during Ligon's preliminary hearing on January 26, 2012.

However, at trial, the victim claimed that he did not recall the incident and declined to identify Ligon. He specifically asserted that he was not afraid of Ligon, but had been smoking "angel dust" around the time of the alleged shooting. Ligon's defense emphasized the victim's unhelpful testimony and supposed drug use during closing arguments to a jury:

> [Defense Counsel]: The first witness, [the victim], I think we can all agree was a fairly horrible witness for everybody. It was a painful experience for all of us to sit through.
>
> But [the victim] did shed light on a couple of issues that I want to bring to your attention. One, [the victim] is addicted to PCP and in 2011 was smoking PCP daily, multiple ties a day. He was likely high. He said that. That's why he didn't want to stay in the hospital. That's why he was ripping the tubes out of his arms. He didn't want people to know he was intoxicated.

N.T., 4/10/14 at 50.

The prosecutor responded during the Commonwealth's closing:

[Prosecutor]: Did he get up on that stand [at trial] and lie? Absolutely. His memory isn't failed. He didn't do every drug he could think of under the sun as he was sitting on that stand. Give me a break. No. But know why he said that. Know why.

It's a whole different circumstance when you're sitting in Temple Hospital and you're talking to detectives without Ligon around. It's a different circumstance when you're giving a photo array and you're asked to circle somebody and Ligon's not there; right? It's whole different situation. But when you walk in this courtroom, all bets are off. It's a totally different story at that point.

* * *

We ask you to come in this courtroom, sit on that stand face to face with the defendant. We ask you to say your name. We ask you to spell it so everyone knows exactly who you are. That's what our system requires. We ask them to sit up here in front of someone they know is a cold-blooded killer, who tried to kill them.

So I call them witnesses. That's what they're called. But when they come to this courtroom and they leave, they're called something else in the neighborhood. They're not called witnesses. They're not called victims. They're called rats and they're called snitches, and that's not okay. I understand it, but it's not ok.

*Id.* at 80-82.

Ligon's trial counsel did not object to the prosecutor's closing argument. Ultimately, the jury convicted Ligon of aggravated assault, possession of an instrument of crime, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and criminal conspiracy, and the trial court

convicted him of one count of persons not to possess a firearm.[1] Particularly significant here, we note that the jury found Ligon not guilty of attempted first-degree murder.[2] On July 18, 2014, the trial court sentenced Ligon to an aggregate term of 15 to 30 years' imprisonment. This Court affirmed his judgment of sentence on July 12, 2016, **Commonwealth v. Ligon**, 154 A.3d 851 (Pa.Super. 2016), and Ligon did not seek review with the Pennsylvania Supreme Court.

On August 25, 2016, Ligon filed a timely *pro se* PCRA petition. Appointed counsel filed an amended petition on April 17, 2017. Following a hearing on November 3, 2017, the PCRA court issued notice of intent to dismiss Ligon's petition pursuant to Pa.R.Crim.P. 907. The PCRA court dismissed Ligon's petition on December 8, 2017. The instant timely appeal followed and Ligon filed a Pa.R.A.P.1925(b) concise statement of errors complained of on appeal.

Ligon raises the following single issue for review:

> 1. Did the PCRA court commit legal error by not finding that the prosecution's characterization of [Ligon] as a 'cold blooded killer' was prejudicial and warrant[ed] a new trial, if trial counsel had objected and made a motion?

Ligon's Br. at 1.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by

---

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 6106(a), 6108, 903(c), and 6105(a)(1), respectively.

[2] 18 Pa.C.S.A. §§ 901(a), 2502(a).

- 4 -

the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011).

Ligon's sole issue on appeal concerns his trial counsel's alleged ineffectiveness. A PCRA petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Commonwealth v. Grove*, 170 A.3d 1127, 1138 (Pa.Super. 2017) (quoting *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa.Super. 2017)). A failure to plead or prove any prong will defeat an ineffectiveness claim. *Id.* Further:

> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citing 42 Pa.C.S.A. § 9543(a)(2)(ii)) (internal quotation marks and brackets omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Ousley*, 21 A.3d at 1244. Additionally, counsel is not ineffective for failing to raise a claim that is devoid of merit. *Commonwealth v. Ligons*, 971 A.2d 1125, 1146 (Pa. 2009).

Germane to this appeal are the elements required to support a conviction for attempted murder:

> [u]nder the Crimes Code, "[a] person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. **See** 18 [Pa.C.S.A.] §§ 901, 2502. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence. [T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts.

**Commonwealth v. Jackson**, 955 A.2d 441, 444 (Pa. Super. 2008) (most internal citations and quotation marks omitted).

In this case, Ligon claims that his trial counsel was ineffective for failing to object to the prosecutor's characterization of him as a "cold-blooded killer" during the Commonwealth's closing arguments. Ligon argues that this characterization was tantamount to prosecutorial misconduct. He specifically points to **Commonwealth v. Capalla**, 185 A. 203 (Pa. 1936), as the seminal case establishing that the verbiage "cold-blooded killer" should be considered *per se* prejudicial and thereby entitles defendants to a new trial. In light of the specific factual circumstances at issue in this case and the recent precedent issued by our Supreme Court in **Commonwealth v. Clancy**, 192 A.3d 44 (Pa. 2018), we cannot agree.

It is axiomatic that during closing arguments the prosecution "is limited to making comments based upon the evidence and fair deductions and inferences therefrom." **Commonwealth v. Joyner**, 365 A.2d 1233, 1236 (Pa. 1976). Indeed, given the critical role that the Commonwealth plays in the administration of justice, a prosecutor has been historically prohibited from expressing "a personal belief regarding a defendant's guilt or innocence or the veracity of the defendant or the credibility of his witnesses." **Commonwealth v. Novasak**, 606 A.2d 477, 481 (Pa.Super. 1992).

However, because trials are necessarily adversarial proceedings, prosecutors are entitled to present their arguments with reasonable latitude. **Commonwealth v. Paddy**, 800 A.2d 294, 316 (Pa. 2002). Moreover, it is well settled that defendants are entitled to a fair trial, not a perfect one. **Commonwealth v. Ragland**, 991 A.2d 336, 340 (Pa. Super. 2010) (citation omitted). "Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect . . . [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." **Id**. (quoting **Commonwealth v. Smith**, 985 A.2d 886, 907 (Pa. 2009)).

Ligon specifically relies on the often cited **Capalla** for the proposition that a prosecutor's reference to a defendant as "a cold blooded killer" constitutes *per se* reversible error. Indeed, in that case, our Supreme Court admonished that no defendant should be characterized by the prosecutor as a "cold blooded killer" until convicted of murder. **Capalla**, 185 A. at 205. The

Court reasoned that such a reference would be "equivalent to an expression of belief on the part of the district attorney that the defendant was guilty of murder in the first degree." *Id.* at 206.

However, Ligon does not discuss subsequent case law that departed from the rigid standard set forth in *Capalla*. For example, in *Commonwealth v. D'Amato*, 526 A.2d 300, 313 (Pa. 1987), our Supreme Court concluded that a prosecutor's closing argument, which characterized the defendant as a "clever, calculating, and cunning executioner," did not require reversal. There, the Court emphasized that the prosecutor's remarks were made in fair response to the defense's characterization of the defendant as an uneducated man tricked into a confession. Likewise, in *Commonwealth v. Chamberlain*, 30 A.3d 381, 408 (Pa. 2011), our Supreme Court emphasized that a prosecutor's statements must be viewed in light of the evidence presented in the case. In *Chamberlain*, the Court held that the prosecutor's description of the defendant as a "murderer" did not require reversal where inferences from the evidence in the case could lead to the conclusion that the defendant had murdered the victim. *Id.*

Most significantly, while the instant case was pending on appeal, the Pennsylvania Supreme Court issued *Clancy*, which synthesized the case law concerning this issue. There, the prosecutor also referred to the defendant as a "cold blooded killer" during closing arguments. The defendant also sought reversal of his conviction under the PCRA. After reviewing the applicable case law, our Supreme Court specifically noted that "since *D'Amato* this Court has

tolerated harsh characterizations of the defendant when they are germane to the law that applies to the case at hand and to a particular element of an offense at issue." **Clancy**, 192 A.3d at 61. The Court specifically endorsed a two-part analysis, that Pennsylvania courts have consistently utilized, to review a prosecutor's remarks: 1) does the substance of the remarks relate to the facts of the case, the elements of the crimes charged, and constitute a fair and reasonable rebuttal to the defenses' arguments and 2) do the remarks have a prejudicial effect on the jury. **Id.** at 62.

In **Clancy**, the defendant was charged with first-degree murder but argued that he had only discharged his gun accidentally. **Id.** at 65. Thus, under the particular facts of that case, the Pennsylvania Supreme Court concluded that the prosecutor's characterization of the defendant as a "cold blooded murderer" directly related to the premeditation element of the crime charged, first-degree murder, and was thus a fair response to the defense argument that the defendant shot the victim in the heat of passion. **Id.** at 66-67. Therefore, the Court in **Clancy** held that the prosecution's use of the term "cold blooded killer" "constituted permissible (if aggressive) oratorical flair" and thus concluded it was unnecessary to evaluate the second prong of analysis, the remark's effect on the jury. **Id.** at 67.

Likewise, in the instant case, the prosecutor's characterization of Ligon as a "cold blooded murderer" is tethered to the evidence adduced at trial, the elements of the crime charged, and the arguments advanced by the defense. The victim's initial statement at the hospital, reiterated at Ligon's preliminary

hearing, alleged that Ligon shot the victim in the back as he attempted to flee. Thus, Ligon was charged with attempted first-degree murder, which requires a *mens rea* of a specific intent to kill. ***Jackson***, 955 A.2d at 444. Therefore, as in ***Clancy***, the term "cold blooded," as utilized by the prosecutor during closing arguments, directly related to Ligon's alleged actions and the *mens rea* required for the crime charged. ***See Clancy***, 192 A.3d at 66-67. Further, as noted above, Ligon's defense centered around discrediting the victim as unable to recall events at trial due to continual impairment caused by drug use. The prosecutor's use of the term "cold blooded killer" to describe Ligon was a fair response to explain why the victim, who had previously identified Ligon as the shooter repeatedly, felt too intimidated to be forthcoming at trial in the presence of Ligon. ***See id.***

In light of the forgoing, we conclude that the prosecutor's use of the term "cold blooded killer" in this case constituted an isolated use of oratorical flair that does not require reversal in the particular factual context presented here. ***See id.***; ***Paddy***, 800 A.2d at 316; ***Ragland***, 991 A.2d at 340. Therefore, it is unnecessary to proceed to an evaluation of the remark's effect on the jury. ***See Clancy***, 192 A.3d at 67. We conclude that Ligon's ineffectiveness claim lacks merit because the prosecutor's closing argument was not impermissible and thus Ligon's trial attorney cannot be deemed ineffective for failing to object. ***See Ligons***, 971 A.2d at 1146. Accordingly, we affirm the PCRA court's denial of Ligon's ineffectiveness claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/19