J-S39017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY CRAWFORD | : | |
| | : | |
| Appellant | : | No. 2041 EDA 2019 |

Appeal from the PCRA Order Entered June 24, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-7359-2014

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 28, 2020**

Appellant, Anthony Crawford, appeals from the order entered on June 24, 2019, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon review, we affirm.

We briefly summarize this case as follows.  On June 3, 2015, a jury convicted Appellant of aggravated assault, possession of an instrument of crime (PIC), carrying a firearm without a license, and recklessly endangering another person (REAP).[1] On August 25, 2015, the trial court imposed an aggregate sentence of 11 to 22 years of imprisonment.  This Court affirmed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2702(a), 907, 6106(a), and 2705, respectively.

Appellant's judgment of sentence on January 12, 2017.[2]  On July 25, 2017,

the Pennsylvania Supreme Court denied further review.  ***Commonwealth v.***

***Crawford***, 169 A.3d 1063 (Pa. 2017).   Appellant filed a timely PCRA petition

on July 24, 2018, raising eight claims of ineffective assistance of counsel.   The

PCRA court held an evidentiary hearing on May 17, 2019.[3]  On June 24, 2019,

the  PCRA  court  entered  an  order,  and  accompanying  opinion,  denying

Appellant relief.  This timely appeal resulted.[4]

On appeal, Appellant presents the following issues[5] for our review:

_____

[2]  We provide a more detailed factual recitation of the facts in our decision affirming  Appellant's  judgment  of  sentence.   ***See Commonwealth v. Crawford***, 2017 WL 121078 (Pa. Super. 2017) (unpublished memorandum).

[3]  The evidentiary hearing was limited to two issues as presented in the PCRA petition.  Neither of those issues are implicated currently in this appeal.  Both of Appellant's current claims were dismissed without an evidentiary hearing.

[4]  Appellant filed a notice of appeal on July 16, 2019.  On October 29, 2019, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) adopting its prior June 24, 2019 decision.

[5]  As mentioned, Appellant initially raised eight issues before the PCRA court, but  on  appeal  only  presents  two  issues  for  our  review.   Appellant  has abandoned the other six issues presented below and, therefore, we find them waived.  ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); ***see also Commonwealth v. Heggins***, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue  identified  on  appeal  but  not  developed  in  the  appellant's  brief  is abandoned and, therefore, waived); ***see also*** Pa.R.A.P. 2119(a) (argument section of appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities).  With regard to the remaining two issues presented on appeal, we have reordered them for ease of discussion.

1. Did the [PCRA] court abuse its discretion in denying [Appellant] relief on his claim that prior appellate counsel was ineffective for failing to raise the trial court's error in declining to give a [jury] instruction [pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954)]?

2. Did the [PCRA] court abuse its discretion when it dismissed, without a hearing, [Appellant's] claim that [trial] counsel was ineffective for failing to object to speculative testimony that violated the best evidence rule?

Appellant's Brief at 2.

Appellant alleges that trial and direct appeal counsel were ineffective. Our standard of review is as follows:

> Our standard of review from the denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error.
>
> * * *
>
> A PCRA petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. A failure to plead or prove any prong will defeat an ineffectiveness claim. Further:
>
> > A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant. Additionally, counsel is not ineffective for failing to raise a claim that is devoid of merit.

*Commonwealth v. Ligon*, 206 A.3d 515, 518–519 (Pa. Super. 2019)

(internal citations, quotations, and brackets omitted).

Moreover,

claims may be cognizable as claims of appellate counsel's ineffectiveness, so long as appellant has "layered" the claims to account for both levels of prior representation. Regarding layered claims, [our Supreme] Court has required appellants to demonstrate not only that guilt phase counsel was ineffective[,] but that appellate counsel also was ineffective.

Furthermore, [appellate courts] are not required to analyze the elements of an ineffectiveness claim in any order; if a claim fails under any element [,] we may proceed to that element first. In addition, [the reviewing court] may begin by assessing the merits of a defaulted underlying claim because, if the claim is deemed meritless, neither trial nor appellate counsel could be found ineffective.

*Commonwealth v. Rivera*, 199 A.3d 365, 374 (Pa. 2018) (internal citations

omitted).

In the first issue we examine, Appellant contends that the PCRA court erred by denying relief on his claim that "appellate counsel was ineffective for failing to raise [the] trial court's failure to give" a jury instruction pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). Appellant's Brief at 21. Appellant claims that "[t]he record reflects that the [trial] witnesses gave qualified identifications based upon third party information received between the event and giving their statements to law enforcement." *Id.* at 10. More specifically, Appellant claims that the victim could not recall who shot him, failed to pick a suspect from a police photo array, conceded that there were other people near Appellant despite previously presuming he was standing

alone, and relied upon information from others after the incident. *Id.* at 22-23. Appellant argues that the PCRA court further erred when it stated that the victim did not want to pick Appellant out of a photo array. Instead, Appellant asserts that the record shows that the victim was unable to identify the person who shot him. *Id.* at 23. Similarly, Appellant claims that Regina Fields, a testifying witness, "did not identify [Appellant] as the shooter in her statement to law enforcement, or even provide a description of him" and she admitted that she was given Appellant's name and social media information by another bystander. *Id.* at 24.

In *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), our Supreme Court found:

> [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the [c]ourt should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826–827.

Our Supreme Court has stated:

> A *Kloiber* charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past.

*Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa. 2014) (internal citation omitted). "A *Kloiber* instruction is not required" when the instruction request "relate[s] to the credibility of the eyewitness testimony, not to the actual

physical ability of the witnesses to observe." **Commonwealth v. Paolello**, 665 A.2d 439, 455 (Pa. 1995).

Here, the PCRA court determined "[t]here was no indication that the witnesses['] view of the perpetrator was impaired in any fashion." PCRA Court Opinion, 6/24/2019, at 6. The PCRA court noted that the victim did "not want[] to pick out [Appellant] in a photo array, [but] he knew who did not shoot him." **Id.** The PCRA court also determined that Regina Fields, and her husband, Jameel[6] Fields, "both clearly saw [Appellant] and previously identified him as the shooter." **Id.**

We agree with the PCRA court's assessment. As this Court stated on direct appeal, "at trial, three eyewitnesses, Jameel Fields, Denise Gardner, and Regina Fields, identified Appellant as the shooter." **Commonwealth v. Crawford**, 2017 WL 121078, at *5 and *6 (Pa. Super. 2017), *citing* N.T., 6/2/2015, at 61, 106, and 149. Initially, we note that Denise Gardner identified Appellant and testified unequivocally that he was the shooter. She identified Appellant from a police photo array after the incident, in person in court, and from video surveillance played at trial. N.T., 6/2/2015, at 99-104. Gardner stated that she was "maybe 10 feet if that" from the shooting and "could see fire come out of the gun." **Id.** at 103-104. Appellant does not

---

[6] We note that the record refers to this witness as both "Jamil" and "Jameel." We will use the name "Jameel" as used by the trial court and a prior panel of this Court.

challenge Gardner's ability to view him. Moreover, she did not equivocate in her identification of Appellant or have difficulty making an identification previously. Likewise, Appellant does not challenge Jameel Fields' unequivocal trial testimony identifying Appellant as the shooter. *Id.* at 131-135. Jameel Fields also testified that he recognized Appellant as the shooter from a police photo array and saw Appellant earlier inside the bar. *Id.* at 141. There was no equivocation by these two witnesses. Therefore, there were no special identification concerns and a *Kloiber* instruction was unwarranted.

Furthermore, the victim testified that he was shot from a direction outside of his field of vision, but he was looking directly at Brian Stokes, who also had a gun. N.T., 3/17/2015, at 42-43. The victim stated that he knew that Stokes did not shoot him, but he did not see who did. *Id.* The victim never identified Appellant as the shooter at trial. The victim did not identify Appellant from a police photo array presented to him at the hospital a short time after the shooting. *Id.* at 54-55. Because the victim never identified Appellant as the shooter, there was no reason to warn to jury to receive the victim's identity testimony with caution under *Kloiber*. Accordingly, for all of the foregoing reasons, there is no merit to Appellant's ineffective assistance of counsel claim for failing to request a *Kloiber* instruction.

Next, Appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's introduction of a "poor – nearly worthless – video recording of the [surveillance] video" of the incident "in violation of the

best evidence rule." *Id.* at 14. Appellant argues that the Commonwealth "inexplicably failed to preserve [the] original video[.]" *Id.* Instead, Appellant suggests that the copy of the surveillance video admitted into evidence and shown to the jury was "overly-pixilated and grainy, people in the video [we]re unidentifiable, and colors and objects [we]re distorted." *Id.* at 15. Appellant claims that trial counsel should have objected to the introduction of a copy of the video surveillance and insisted on the original under the best evidence rule. Appellant claims that the Commonwealth acted in bad faith when it failed to obtain the original surveillance video.[7] *Id.* at 18. Further, he argues he was prejudiced because the investigating officer testified that he was able to identify Appellant after viewing the original surveillance video, which was not presented at trial. *Id.* at 19. More specifically, Appellant contends that the investigating officer testified "regarding the suspect's tattoo in the original surveillance video and had [Appellant] show the jury his tattoo, despite the fact that the tattoo in the video [shown to the jury], if it [were] a tattoo, [was] too pixilated to discern details." *Id.* at 15-16. Appellant maintains that identity was at issue because "there was another black male present that night wearing a purple or blue shirt." *Id.* at 16. Appellant claims that the video recording was not corroborated by any other witness testimony, because

_____

[7] On collateral review, we limit our analysis to trial counsel's stewardship. The Commonwealth's alleged bad faith actions/inactions during discovery were subject to review on direct appeal.

"[t]he four other witnesses were impeached regarding their identifications and descriptions." *Id.* at 20.

On this issue, the PCRA court concluded "the Commonwealth did not just rely upon Officer Barr's testimony about the video tape, but also other witnesses who identified [Appellant] as the shooter, and also showed the jury the footage in question." PCRA Court Opinion, 6/24/2019, at 8. Based upon the witness testimony at trial, as detailed above, we agree. Multiple eyewitnesses testified that they personally saw Appellant shoot the victim.

Moreover, on direct appeal:

Appellant aver[red] the trial court erred by allowing Officer Matthew Barr to speculate about actions taken by Appellant at the scene of the crime [and] complain[ed] it was error to permit Officer Barr to narrate the course of events transpiring as the jury watched a surveillance video entered into evidence by the Commonwealth. More specifically, Appellant claim[ed] that Officer Barr, who was not qualified as an expert and did not have personal knowledge of the incident, speculated that the surveillance video showed Appellant retrieve what the officer believed was a firearm, from underneath the front seat of a car prior to the shooting.

*Commonwealth v. Crawford*, 2017 WL 121078, at *5 (Pa. Super. 2017).

The prior panel determined that

it was not an abuse of discretion to allow a detective to offer his observations about images depicted in a surveillance video under Pa.R.E.701, which governs the admission of lay-person testimony. *See Commonwealth v. Brown*, 134 A.3d 1097, 1106 (Pa. Super. 2016). Additionally, we note[d] that after Officer Barr offered his testimony, the trial court cautioned the jurors to draw their own conclusions of what the video depicted. N.T., 6/1/20115, at 112. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011).

- 9 -

*Id.*

Taken together, Appellant has not demonstrated prejudice or shown a reasonable probability that the outcome of the proceeding would have been different had the jury been shown the original surveillance video as opposed to a copy. As detailed above, three eyewitnesses identified Appellant as the shooter at trial. Furthermore, the trial court cautioned the jury to draw their own conclusions of what the surveillance video depicted and, again, we presume the jury followed that instruction. Hence, Appellant is not entitled to relief on his ineffective assistance of counsel claim pertaining to the presentation of the video surveillance evidence.

Finally, Appellant argues that he was entitled to an evidentiary hearing on both of the issues presented on appeal.[8] Appellant's Brief at 20 and 25. We have stated:

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

---

[8] As previously mentioned, the PCRA court held an evidentiary hearing limited to other unrelated issues.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted). Here, having determined that there were no issues of material fact, we discern no abuse of discretion in denying an evidentiary hearing on the two PCRA issues presented on appeal herein.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/28/20