J-S39027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BERNARD SALMOND | : | |
| | : | |
| Appellant | : | No. 1975 EDA 2019 |

Appeal from the PCRA Order Entered June 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009618-2012

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                      **FILED NOVEMBER 16, 2020**

Appellant, Bernard Salmond, appeals from the order entered on June 21, 2019, which dismissed his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  In this appeal from the denial of PCRA relief, Appellant's court-appointed counsel filed a petition to withdraw as counsel and a no-merit brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  As we conclude that counsel fulfilled the procedural requirements of **Turner**/**Finley** and that this appeal is without merit, we grant counsel's petition to withdraw and affirm the PCRA court's order denying Appellant post-conviction relief.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In Appellant's direct appeal from his judgment of sentence, we quoted the trial court's recitation of the underlying facts:

> On April 10, 2008, Kenneth Wiggins and Appellant's brother, Quentin Salmond ("Quentin"), were betting on a game of dice. During the betting, there was an altercation over a bet which prompted Wiggins to take money from Quentin.
>
> Two days later, on April 12, 2008, at approximately 12:30 p.m., Wiggins went into the Skyline Restaurant, which he was known to frequent. As Wiggins entered the restaurant, a car driven by Appellant, with Quentin and Jamil Banks as passengers, pulled up and parked on Woodlawn Road, near the intersection with Chew Road. Appellant was driving a blue Lincoln Continental, with PA license plate GXW5380. Quentin, dressed in an Islamic khimar[fn.1] and sunglasses to hide his identity, and Banks exited the vehicle and walked up the street towards the Skyline Restaurant. Appellant remained in the car, parked, with the engine running. Joan Hill witnessed Appellant park the car and also noticed Quentin, who appeared to Hill to be a male wearing female headwear. Believing that a robbery was about to happen, Hill called 911.
>
> > [fn.1] A khimar is a two-piece garment consisting of a long cape covering the entire body and a head covering that also can be pulled up to hide the mouth.
>
> Quentin remained outside the restaurant while Banks went inside and purchased a soda, presumably scouting for Wiggins. Banks then exited the restaurant and returned to where Quentin was standing outside. Shortly thereafter, Wiggins left the restaurant and began walking up the street when he was confronted by Quentin and Banks. After being shot, Wiggins attempted to flee the scene but collapsed on the far side of the street. Quentin and Banks ran back to the car in which Appellant was waiting, and the three fled the scene. Medical personnel arrived on scene and transported Wiggins to the hospital, where he was later pronounced dead.
>
> Police recovered two fired cartridge casings and a Mountain Dew soda bottle from the scene of the shooting. Police also

recovered the surveillance cameras from the Skyline Restaurant, which had recorded the entire encounter. A .32 caliber bullet was recovered from Wiggins' body. As the casings found at the scene were not .32 caliber, police determined that two guns had been fired outside of the restaurant, one .22 caliber semi-automatic and one .32 caliber revolver. . .

Appellant had obtained the car that he used in the murder from Charles Hayward, who sold the vehicle to Appellant but never transferred the title. Because Appellant feared that police would trace the car to him through Hayward, Appellant instructed two associates, Shawn Pina and Tyree Fisher, to burn the vehicle. The vehicle was found on April 14, 2008, two days after the shooting, when fire department personnel responded to a report of a vehicle fire near Chew Street and 10th Street in Philadelphia.

*Commonwealth v. Salmond*, 134 A.3d 493 (Pa. Super. 2015) (unpublished memorandum) at 1-3 (citations, corrections, and brackets omitted), *quoting*, Trial Court Opinion, 1/22/15, at 2-4.

The jury found Appellant guilty of third-degree murder and criminal conspiracy.[1] On June 20, 2014, the trial court sentenced Appellant to serve an aggregate term of 18 to 36 years in prison for his convictions. We affirmed Appellant's judgment of sentence on November 16, 2015 and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on March 16, 2016. *Commonwealth v. Salmond*, 134 A.3d 493 (Pa. Super. 2015) (unpublished memorandum) at 1-20, *appeal denied*, ___ A.3d ___, 661 EAL 2015 (Pa. 2016).

---

[1] 18 Pa.C.S.A. §§ 2052(c) and 903, respectively.

- 3 -

On September 8, 2016, Appellant filed a timely, *pro se* PCRA petition. Within the *pro se* petition, Appellant claimed that his trial counsel was ineffective because counsel: 1) failed to file a motion to suppress the identification of Appellant; 2) failed to present Antoinette Samuels as an alibi witness; 3) failed to present character witnesses; 4) failed to request a **Kloiber**[2] instruction; and, 5) committed a variety of acts that, cumulatively, denied Appellant a fair trial. **See** Appellant's *Pro Se* PCRA Petition, 9/8/16, at 1-21.

The PCRA court appointed David Rudenstein, Esquire, to represent Appellant and Attorney Rudenstein filed an amended petition on Appellant's behalf. The amended petition claimed that trial counsel was ineffective for failing to present the testimony of Antoinette Samuels and Leonard Weal. Amended PCRA Petition, 1/18/18, at 2. Further, Appellant claimed that "Robert Bluefort would now testify that he was previously coerced into testifying [at trial] that [Appellant] had been involved in the aforementioned conspiracy and/or murder." **Id.** at 2-3.

On November 20, 2018, the PCRA court notified Appellant that it intended to dismiss his petition in 20 days, without holding a hearing, because Appellant "failed to include certifications of [his] proffered witnesses." PCRA Court Notice, 11/20/18, at 1; **see also** Pa.R.Crim.P. 907(1). The PCRA court

---

[2] **See Commonwealth v. Kloiber**, 106 A.2d 820, 826-827 (Pa. 1954).

- 4 -

finally dismissed Appellant's petition on June 21, 2019 and Appellant filed a timely notice of appeal.

Following the notice of appeal, Attorney Rudenstein filed both a petition to withdraw as counsel and a *Turner*/*Finley* no-merit brief in this Court. However, after the filing of the petition to withdraw and the no-merit brief, Attorney Rudenstein unfortunately died. The PCRA court then appointed Gary S. Server, Esquire, to represent Appellant.

This Court struck Attorney Rudenstein's filings and the prothonotary established a new briefing schedule. Attorney Server then filed his own petition to withdraw and *Turner*/*Finley* no-merit brief. The *Turner*/*Finley* brief presents the following claims for review:[3]

> [1.] Whether trial counsel provided [Appellant] with ineffective assistance where counsel failed to investigate and [] call exculpatory witnesses: Antoinette Samuels [and] Leonard Weal?
>
> [2.] Whether there was after acquired evidence from Robert Bluefort that he had been coerced to testify against [Appellant] at trial?
>
> [3.] Whether trial counsel provided [Appellant] with ineffective assistance of counsel where his loyalty was to the Commonwealth and not to [Appellant]?
>
> [4.] Whether [Appellant's] conviction is against the weight of the evidence and shocking to one's sense of justice?
>
> [5.] Whether [the trial court] engaged in some type of impropriety by not recognizing that the case brought against

---

[3] For ease of discussion, we have renumbered Appellant's claims on appeal.

> [Appellant] was supported only by the biased testimony of Robert Bluefort?

Appellant's Brief at 6-7.

Prior to addressing the merits of the issues raised in the ***Turner***/***Finley*** brief, we must determine whether counsel met the procedural requirements necessary to withdraw. Counsel seeking to withdraw in PCRA proceedings

> must review the case zealously. ***Turner***/***Finley*** counsel must then submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> Where counsel submits a petition and no-merit letter that satisfy the technical demands of ***Turner***/***Finley***, the court — [the PCRA] court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Commonwealth v. Muzzy***, 141 A.3d 509, 510–511 (Pa. Super. 2016) (citations and corrections omitted).

Here, counsel fulfilled the procedural requirements necessary for withdrawing as PCRA counsel. We thus turn to the merits of the claims raised in the ***Turner***/***Finley*** brief.

"Our standard of review from the denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by

the evidence of record and whether it is free of legal error." ***Commonwealth v. Ligon***, 206 A.3d 515, 518 (Pa. Super. 2019) (quotations and citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the petitioner]." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005)

- 7 -

("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

First, Appellant claims that trial counsel was ineffective for failing to investigate and call, as witnesses, Antoinette Samuels and Leonard Weal. Our Supreme Court has explained:

In order to prevail on a claim of ineffectiveness for failing to call a witness, a [petitioner] must [plead and] prove, in addition to . . . the three [general ineffective assistance of counsel] requirements [listed above], that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied [the petitioner] a fair trial.

***Commonwealth v. Wright***, 961 A.2d 119, 155 (Pa. 2008).

Further, under 42 Pa.C.S.A. § 9545(d)(1):

(i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.

(ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony. In lieu of including the witness's name and address in the certification under this subparagraph, counsel may provide the witness's name and address directly to the Commonwealth. The certification under this subparagraph shall include any documents material to the witness's testimony and specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature. Nothing in this subparagraph shall be construed to contravene any applicable attorney-client privilege between the petitioner and postconviction counsel.

(iii) Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S.A. § 9545(d)(1).

In this case, Appellant did not include the requisite Section 9545(d)(1) certifications in either his *pro se* or amended PCRA petitions. Therefore, Appellant's claim of error has no merit.[4] ***See Commonwealth v. Brown***,

---

[4] We further note that Attorney Rudenstein averred that he attempted to contact Antoinette Samuels and Leonard Weal. He averred that Ms. Samuels refused all contact with him and that Mr. Weal "refused to give a statement and related to [Attorney Rudenstein's private investigator] that he did not

- 9 -

767 A.2d 576, 583 (Pa. Super. 2001) (holding: "[s]ince [a]ppellant failed to provide any certification with respect to potential witnesses, the [PCRA] Court clearly did not abuse its discretion by failing to conduct an evidentiary hearing. Obviously the [PCRA] Court was not required to conduct an evidentiary hearing when there were no witnesses presented to the Court who could give admissible testimony at such a hearing").

Next, Appellant claims that he discovered new evidence, from Robert Bluefort, that Mr. Bluefort had been coerced to testify against Appellant at trial. However, as was true above, Appellant's claim on appeal immediately fails, as Appellant did not provide the requisite Section 9545(d)(1) certifications regarding Mr. Bluefort's proposed testimony.[5]  **See** 42 Pa.C.S.A. § 9545(d)(1).

Third, Appellant claims that his trial counsel was ineffective because counsel's "loyalty was to the Commonwealth and not to [Appellant]." Appellant did not include this claim in either his *pro se* or amended PCRA petitions.  Appellant's Brief at 6.  As such, Appellant waived this claim on appeal.  **Commonwealth v. Jones**, 912 A.2d 268, 278 (Pa. 2006) ("an issue

---

know anything about the case, [and he] did not know [Appellant] or Mr. Bluefort or Ms. Samuels."  Attorney Rudenstein's Motion to Withdraw, 7/8/19, at 1-4.

[5] Moreover, Attorney Rudenstein also averred that he attempted to contact Mr. Bluefort, but Mr. Bluefort refused all of Attorney Rudenstein's attempts at contact.  Attorney Rudenstein's Motion to Withdraw, 7/8/19, at 1-4.

is waived where it was not presented in the original or amended PCRA petition below").

For his final two claims on appeal, Appellant contends that his convictions were against the weight of the evidence and that the trial court "engaged in some type of impropriety by not recognizing that the case brought against [Appellant] was supported only by the biased testimony of Robert Bluefort." Appellant's Brief at 6-7. Neither claim is cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543(a)(2). As such, the claims have no merit and fail as a matter of law.

After review, we conclude that counsel complied with the procedural requirements for withdrawing as counsel and, under **Turner**/**Finley**, the issues Appellant wished to pursue in his PCRA petition are without merit. Accordingly, we grant counsel's petition to withdraw and affirm the order denying Appellant post-conviction collateral relief.

Petition to withdraw as counsel granted. Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/20

- 11 -