J-S06025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DANIEL MANDIC | : | |
| Appellant | : | No. 1737 EDA 2021 |

Appeal from the PCRA Order Entered July 30, 2021
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000224-2018,
CP-64-CR-0000288-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DANIEL MANDIC | : | |
| Appellant | : | No. 1738 EDA 2021 |

Appeal from the PCRA Order Entered July 30, 2021
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000224-2018,
CP-64-CR-0000288-2018

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 20, 2022**

Daniel Mandic appeals from the order dismissing his amended Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S.A. §§ 9541-9546. Mandic argues his trial counsel provided ineffective assistance in connection with his guilty plea because the factual basis was unclear and Mandic was unsworn when the factual basis was stated. We affirm.

While on probation for another matter, Mandic was arrested and charged with committing new crimes on the two above-listed docket numbers. On the first, he was charged with two counts, including one count of persons not to possess firearms and one count of possession of a small amount of marijuana, related to a gun and drugs probation officers found in Mandic's bedroom during a spot check. On the second docket number, Mandic was charged with 20 counts, including five counts of endangering the welfare of children, five counts of simple assault, five counts of terroristic threats, and five counts of recklessly endangering another person. These charges arose from allegations of abuse disclosed by his five children.

On the day of the guilty plea hearing, Mandic completed and signed a written plea colloquy. Among other things, it stated Mandic understood what crimes he had been charged with and the elements of those crimes. *See* Written Guilty Plea Colloquy, 11/1/18, at 2. It specified that Mandic would be pleading guilty to count one on the first Information – the firearms charge – and counts six through ten on the second Information – the simple assault charges. *Id.* at 8; *see also* 18 Pa.C.S.A. §§ 6105(a)(1) and 2701(a)(1), respectively. The Bill of Information described the assaults as occurring "on or about or between Sunday, the 1st day of January, 2017 and Sunday, the 31st day of December, 2017." Bills of Information, No. CP-64-CR-0000288-2018, 8/6/18, at 2. Each count listed a different one of Mandic's children as the victim of simple assault. *Id.*

At the guilty plea hearing, the Commonwealth stated the factual basis for the simple assault charges as follows:

> [The Prosecutor]: With regard to Case Number 288, [Mandic] is the father of 5 minor children, ages 11, 10, 9, and 8[-]year[-] old twins. During this 2017 calendar year, on more than one occasion, [Mandic] did hit and or kick and or punch and or choke each of the [aforementioned] children which did cause bodily injury to each child.
>
> THE COURT: Is that essentially true, Mr. Mandic?
>
> Mr. MANDIC: Yes.

N.T., 11/1/18, at 5.

Mandic was then sworn in, and the prosecutor administered a guilty plea colloquy on the record. Mandic acknowledged that he signed the written guilty plea colloquy, that he was satisfied with his representation, that he had not been threatened or promised anything, that he was not under the influence of any drugs or alcohol, and that he understood he was surrendering his rights to a jury trial and the maximum penalties he might receive for his crimes. *Id.* at 5-8. Mandic reaffirmed his desire to plead guilty, and the court admitted the written colloquy into evidence. *Id.* at 7-8. The prosecutor stated that Mandic and his attorney had signed the Bills of Information, indicating the counts to which Mandic had pleaded guilty. *Id.* at 8.

At the sentencing hearing, the Commonwealth made the following argument regarding the incidents of child abuse:

> First of all, with regard to Case Number 288, which is the child abuse case, in [Mandic]'s statement, I was taken aback by his excuse that this was simply disciplining his children and not abuse.

I acknowledge that in the law there is a fine line between discipline and abuse. But what [Mandic] did is so far from that line. I'm going to read a couple of excerpts for you from the 11, 10, 9, and two 8[-]year[-]old victims on their account of what [Mandic] did to them. He beat them with a belt. He grabbed the female from the front of her neck and lifted her off the ground and held her this way until she stopped struggling. [He] held a knife to the male child's [sic], he held a knife to the male child's throat and threatened to cut his throat as punishment for taking a piece of candy. He hit the kids with belt in the face and the head. He punched them in the stomach. He pushed a child's head through the wall. The children were afraid that they were going to die. The oldest female would help the other children. 11 years old, would hold ice on their bruises after he beat them. Your Honor, that is not discipline, that is child abuse. [Mandic] states that his older two children ended up just fine because he did these things to them, but then on page number 10 of the pre-sentence Investigation, it notes he never even met one of his children that he states ended up just fine because he did this to them.

N.T., 12/20/18, at 5-6.

Mandic's attorney argued that Mandic has accepted that what he did as a "course of conduct" with his children in 2017 was perpetrating abuse. *Id.* at 8. He explained that Mandic had been abusing drugs and alcohol at the time and had subsequently sought help and tried to rehabilitate himself. *Id.* at 8-11. Mandic exercised his right to allocution, stating that he was "way out of line, with the disciplining and the abuse." *Id.* at 11-12.

Prior to imposing sentence, the court acknowledged that it read and was informed by the pre-sentence investigation report ("PSI").[1] Regarding the incidents of child abuse, the court made the following comments:

The victims are an 11[-]year[-]old female, a 10[-]year[-]old female, a 10[-]year[-]old male, an 8[-]year[-]old female, and

_____

[1] The PSI report is not included in the certified record.

- 4 -

another 8[-]year[-]old female. The alleged abuses ran from January through December of 2017. 12 months of a nightmare for these children. And the District Attorney, I guess, stole my intended references, so I'm not going to repeat them here. But to threaten to cut off a child's fingers with a knife because you say he stole gum. He stole a piece of gum, that's all it was. And that as soon as he stole it. And if he stole it[,] it's probably because he was starving. You pushed [a child's] head through a wall. And . . . the one you held up by the throat, told the officials that she thought she was going to die. [Another child] disclosed that one time you had a gun in your hand and you threatened to shoot her with it. My goodness. There are literally millions of couples out there that would sacrifice their right arm to have a child. And you, for at least 12 months, repeatedly, victimized these children. I don't think you have any idea how trauma, trauma such as you subjected your children to, how it can ruin their lives. Ruin them, through no fault of their own. When I read the account of this incident, I really got sick. I got sick to my stomach. What in the world are you thinking? In regards to calling your children derogatory names, you admit it that you did that and stated it occurred often. These [sic], a child is a gift. A child is a gift to the parents. Why, why would you ever want to do this to the gifts you received? And I emphatically dispute your statement that you were under the impression this is a form of discipline and not abuse. Sir, you went through supervision with Wayne County Children and Youth Services and I presided over that. And your physical abuse of the children was a matter that was brought to light during those proceedings. And that predated this by years. You knew what you were doing was abusing those children. You said to the officer I love my children. I love my children. I love my children. I love my child so much I'm going to threaten to cut her finger off. I love my children so much I'm going to hold her up and shake her until she stops squirming. I love my children so much I'm going to threaten her with a gun. There's something very sick in your head. Very sick. And you said you love your children but they're going to be in trouble one day. Well that last part of your statement is certainly true. I haven't followed the recent case and I don't know how much trouble they're in. But having been exposed to children who are suffering this kind of trauma in other cases, I'm sure these children are an absolute mess because of you. You've robbed them of so much that they could have had in life.

*Id.* at 13-15.

The trial court sentenced Mandic to 36 to 72 months in prison for the firearms conviction and five consecutive terms of 11½ to 24 months in prison for the simple assault convictions. The aggregate sentence was 93½ to 192 months' imprisonment. Each term was at the upper end of the standard guidelines range. Mandic filed a post-sentence motion, which the court denied. On direct appeal, we affirmed the judgment of sentence. *Commonwealth v. Mandic*, No. 485 EDA 2019, 2019 WL 6652092, at *4 (Pa.Super. Dec. 6, 2019).

Mandic filed the instant, timely PCRA petition, and the court appointed counsel, who filed an amended petition. The court held a hearing at which Mandic and his trial counsel testified.

PCRA counsel argued that at the plea hearing, although Mandic only pleaded guilty to "five instances of simple assault," the prosecutor, when stating the factual basis, "[set] forth a period of time, a calendar year of 2017, and then [said,] on more than one occasion he did either this or he did that." N.T., 3/22/21, at 11. PCRA counsel claimed the factual basis was therefore "a nebulous statement," because "more than one occasion . . . can be more than five occasions," and "we don't know on how many occasions" an assault took place. *Id.* at 11-12.[2]

---

[2] Mandic raised other issues before the PCRA court, which he has not pursued on appeal.

Trial counsel testified that he did not contest the factual basis for the guilty pleas because "the assertions of the Commonwealth came within the parameters of the definition of simple assault. And the agreement was to accept and enter a plea to those specific simple assault charges." *Id.* at 11. Trial counsel also explained that "in context," there were five counts of assault as the counts were "relating to the multiple victims." *Id.* at 12.

Trial counsel further testified that in exchange for pleading guilty to five counts of simple assault and one firearms charge, the Commonwealth agreed to drop other charges, of which there had been over 20, and agreed not to object to a defense request for a concurrent sentence. *Id.* at 8. One of counsel's goals had been to have the felony charges dismissed and reduce the number of counts and sentencing exposure. *Id.* at 24-25. Trial counsel explained that to revoke the guilty plea would have resulted in "bringing back those twenty some odd offenses [which] would be, as I said, a crushing prosecution." *Id.* at 16. He testified that Mandic did not express hesitation about pleading guilty, and counsel said he would not have recommended withdrawing the plea, even after sentencing, based on the initial number of charges Mandic had been facing. *Id.* at 15-16. He stated the PSI had recommended the court impose a 50- to 120-month sentence. *Id.* at 16-17.

Mandic testified that he asked counsel twice to "pull his plea." *Id.* at 30. He stated the first time was "when I got the report of like what they said I was doing with the kids, and I didn't feel comfortable pleading to the simple assaults because with the punching and throwing in the walls and the choking,

- 7 -

I didn't do that. And I told him that." *Id.* at 30. However, counsel, "put his hand on my shoulder and said that's a simple assault. That's all you're pleading to." *Id.* He claims he also asked counsel prior to the sentencing hearing about revoking his guilty plea, but that counsel "told me to relax and be careful what I say because he didn't want the Judge to pull my plea. He said if you want to be home by next Christmas, just trust me." *Id.* at 30. Mandic also stated that when the prosecutor read the factual basis, counsel "put his hand on me and said I got this, I got this. So, I was waiting for him to say something, and, the gavel hit, and he didn't say a word." *Id.* at 31.

The PCRA court denied the petition. It found that Mandic "agreed with the factual allegations as read into the record by [the prosecutor] at the guilty plea hearing," and did not express a desire to withdraw his guilty plea prior to sentencing. PCRA Court Opinion, July 30, 2021, at 2-3. The court found trial counsel had informed Mandic of the possible sentences he may receive, and "[n]o evidence was presented that [Mandic] did not knowingly, voluntarily, and intelligently enter his guilty plea to five (5) counts of Simple Assault." *Id.* at 3.

Mandic appealed. He frames his issues as follows:

1. Is the PCRA Court's finding that [Mandic] failed to establish entitlement to relief supported by the record and free of legal error?

2. Did [Mandic] establish that his plea was entered upon a defective and unsworn factual basis and was plea counsel ineffective for failing to object or otherwise challenge the validity of same?

Mandic's Br. at 11 (suggested answers omitted).

Mandic argues that his guilty plea colloquy was defective because he was not under oath at the time the prosecutor stated the factual basis for the plea. Mandic's Br. at 13. Mandic claims he could therefore neither "agree nor disagree" to the factual basis read by the prosecutor, and "[a]s a result, the factual basis is a nullity and the plea should be rendered invalid." *Id.* at 17.

Mandic further argues that the factual basis for the plea "was not concretely defined (but rather implied a course of conduct as opposed to five discrete instances)." *Id.* at 17. He claims that as a result, "at the time of sentencing, more instances of abuse/assault (and even other crimes) were considered over and above that to which [Mandic] had pleaded guilty[.]" *Id.* at 12-13; *see also id.* at 17 ("The Sentencing transcript reveals that the [c]ourt considered facts and circumstances beyond five (5) incidents of assault for which [Mandic] accepted responsibility"). Mandic asserts that due to the unspecific factual basis, given when he was unsworn, his plea was not knowingly, intelligently, or voluntarily entered, and his plea counsel provided ineffective assistance in failing to object to the guilty plea or move to withdraw it either before or after sentencing. *Id.* at 17-18.

We review the PCRA court's decision to determine whether it is "supported by the evidence of record and . . . free of legal error." *Commonwealth v. Ligon*, 206 A.3d 515, 518 (Pa.Super. 2019). We grant great deference to the PCRA court's factual findings but apply a *de novo* standard of review to the court's legal conclusions. *Commonwealth v. Diaz*,

183 A.3d 417, 421 (Pa.Super. 2018), *aff'd*, 226 A.3d 995 (Pa. 2020). This Court is not bound by the rationale of the PCRA court and may affirm its decision on any basis. *Id.*

A PCRA petitioner advancing a claim of trial counsel ineffectiveness must plead and prove each of the following:

> (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Ligon*, 206 A.3d at 519. Counsel is presumed to be effective until the petitioner has proven otherwise. *Id.*

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." *Commonwealth v. Allen*, 732 A.2d 582, 587 (Pa. 1999). We may consider the totality of circumstances surrounding the plea to determine whether this standard is met. *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa.Super. 2008). For a plea to be voluntary, counsel's advice in connection with the plea must fall "within the range of competence demanded of attorneys in criminal cases." *Id.* (citation omitted). For a plea to be knowing, the plea colloquy must "demonstrate that the defendant understood what the plea connoted and its consequences." *Id.* (citation omitted). A factual basis for the charges is required in order "to protect a mistaken plea to an offense that is not actually

implicated by the defendant's conduct." ***Commonwealth v. Flanagan***, 854 A.2d 489, 503 (Pa. 2004). Any omission or defect will only invalidate a guilty plea if the surrounding circumstances do not "disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." ***Commonwealth v. Fluharty***, 632 A.2d 312, 315 (Pa.Super. 1993). A defendant's disappointment in the resulting sentence does not evince that a plea was unknowing or involuntary. ***Bedell***, 954 A.2d at 1212.

We agree with the PCRA court that Mandic has failed to prove that any ineffectiveness caused him to enter an involuntary or unknowing plea. Counsel's advice to plead guilty to five counts of simple assault in exchange for a reduction in the total number of charges was within the range of competence demanded of attorneys. ***Bedell***, 954 A.2d at 1212. The transcripts of the guilty plea hearing and PCRA hearing show that Mandic understood that he was pleading guilty to five counts of simple assault, and that in exchange, the Commonwealth would reduce the number of counts and his overall sentencing exposure. Mandic was also aware of the potential sentences for these charges.

We are unpersuaded that the factual basis lacked specificity, such that Mandic did not reasonably understand the facts behind the five counts of simple assault, or that Mandic did not understand the nature of each count. The Bills of Information – which Mandic signed, and which were referenced in the written guilty plea colloquy, which was, in turn, incorporated into the plea

proceedings – state that each count of simple assault corresponded to a different victim, and together spanned the entirety of 2017. When stating the factual basis at the plea hearing, the prosecutor said, "During this 2017 calendar year, on more than one occasion, [Mandic] did hit and or kick and or punch and or choke each of the [aforementioned] children which did cause bodily injury to each child." N.T., 11/1/18, at 5. The prosecutor made it plain that the five counts did not represent five discrete instances of abuse, but multiple occasions of abuse of each of five children over the course of a year.

Accordingly, at sentencing, Mandic's trial counsel aptly described the assaults as a "course of conduct." N.T., 12/20/18, at 8. Mandic also testified before the court at sentencing without denying any of the statements made by the prosecutor regarding the multiple instances of abuse. *Id.* at 11-12. While Mandic testified at the PCRA hearing that he did not commit the assaults as described in "the report,"[3] he stated he nonetheless agreed to plead guilty because his trial counsel advised he would receive a reduced sentence. N.T., 3/22/21, at 30. The totality of the circumstances therefore indicate that Mandic knew and understood that he was pleading to only five counts of simple assault in order to reduce his sentencing exposure, but that each count represented multiple instances of abuse. *Bedell*, 954 A.2d at 1212.

Moreover, we find no merit to Mandic's argument that his plea was a nullity because he was unsworn at the time the prosecutor stated the factual

_____

[3] It is unclear from the testimony whether Mandic was disagreeing with the allegations in the affidavit of probable cause or the PSI.

- 12 -

basis, or that counsel was ineffective for failing to object or move to withdraw the plea on that basis. Had Mandic's trial counsel objected at the plea hearing, the remedy would have been to have Mandic swear an oath and to proceed with the colloquy. Mandic does not argue that, had he been sworn to tell the truth, he would have answered differently when the prosecutor recited the factual basis and asked Mandic if he agreed. To the contrary, Mandic testified that he agreed to the factual basis, based on his attorney's advice. *Id.* at 31. Moreover, he does not claim that the failure to swear him in somehow interfered with his ability to enter a voluntary and knowing plea. This defect does not justify invalidating the plea. *Fluharty*, 632 A.2d at 315.

To the extent that Mandic argues his counsel was ineffective for failing to object to statements made by the prosecutor at sentencing or contained in the PSI, on the basis that they were incorrect or did not comport with the charges, his challenge goes to the discretionary aspects of Mandic's sentence and does not form a basis for withdrawing a plea. Mandic has not proven that the PCRA court erred in denying relief on his claim that prior counsel was ineffective in connection with his guilty plea.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/20/2022</u>