J-A22002-15

2015 PA Super 188

| IN THE INTEREST OF: I.M.S., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| | No. 691 MDA 2015 |

Appeal from the Dispositional Order March 9, 2015
In the Court of Common Pleas of Cumberland County
Juvenile Division at No(s): CP-21-JV-0000238-2014

BEFORE:  BOWES, JENKINS, AND PLATT,* JJ.

OPINION BY BOWES, J.:                         **FILED SEPTEMBER 08, 2015**

I.M.S. appeals from the dispositional order entered by the juvenile court adjudicating him delinquent for the commission of acts constituting possession of marijuana and possession of drug paraphernalia.  We affirm.

Juvenile was a passenger in a vehicle stopped as a result of an inoperable driver's side headlight.  Officer Brian Barnes effectuated the traffic stop along with his partner.  After the driver of the car, Jordan Cox, provided several inconsistent answers to questions regarding his travel, Officer Barnes asked him to exit the vehicle and step to the rear of the automobile.  At that time, Mr. Cox admitted that Juvenile had been smoking marijuana in the car.  He also informed the officer that he was unsure if Juvenile had marijuana in a drawstring knapsack Juvenile possessed in the

---

* Retired Senior Judge assigned to the Superior Court.

vehicle. Officer Barnes then removed Juvenile from the car and questioned him. When he did so, he noticed marijuana flakes on Juvenile's shirt and pants. He also detected an odor of burnt marijuana.

Juvenile acknowledged that his bag contained marijuana and paraphernalia. Officer Barnes then asked Mr. Cox for permission to search the car. Mr. Cox consented to a search of the vehicle. Officer Barnes, in the process of searching the car, also searched Juvenile's bag and found marijuana, rolling papers, a grinder, a scale, and a glass smoking pipe. The bag was not on Juvenile's person, but was located within reach in the backseat floor area behind the driver's seat. Juvenile was arrested and charged with delinquent acts of possessing marijuana and drug paraphernalia.

Juvenile filed a motion to suppress. The suppression court ruled that under **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) (plurality),[1] wherein our Supreme Court adopted the federal warrantless automobile search exception, Officer Barnes had authority to search a passenger's belongings. Thereafter, the matter proceeded to an adjudicatory hearing. The juvenile court found Juvenile delinquent. Juvenile timely appealed. He presents one issue for our review.

_____

[1] A majority of justices agreed to align Pennsylvania constitutional law with the Fourth Amendment jurisprudence of the United States Supreme Court with respect to warrantless vehicle searches.

I. Whether evidence found inside the Appellant's drawstring bag during a search of an automobile in which Appellant was a passenger should have been suppressed, when the evidence demonstrated that the officer knew the bag belonged to the Appellant, searched the bag by relying only upon the consent of the driver who did not have actual or apparent authority to consent to the search of [the] bag, and the Appellant never consented to the search of his belongings?

Appellant's brief at 5.

In reviewing a juvenile court order denying a suppression motion, we consider the factual findings of the juvenile court and whether they are supported by record evidence. *In re T.B.*, 11 A.3d 500, 505 (Pa.Super. 2010). We consider only the evidence of the Commonwealth's witnesses and testimony of the defendant's witnesses that are not contradicted by the suppression record. *Id*. Where the evidence supports the juvenile court's factual findings, we are bound by them and will reverse only where the legal conclusions derived from those facts are in error. *Id*.

Juvenile argues that, under the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution, the warrantless search of his bag was unconstitutional. He contends that he had a reasonable expectation of privacy in his own backpack and that a warrantless search of his personal luggage, which was closed, violated his protected privacy interests. In addition, Juvenile maintains that Mr. Cox's consent to search the vehicle did not include consent to search Juvenile's personal belongings. In this respect, Juvenile also suggests that because Officer Barnes testified to

conducting the search based on consent, the federal warrantless automobile jurisprudence articulated by the United States Supreme Court and recently adopted in **Gary**, **supra**, is not controlling.

The Commonwealth responds that since the officer had probable cause to search the vehicle after a lawful stop, **Gary** applies. It adds that because Pennsylvania has now adopted the federal warrantless automobile search exception, under United States Supreme Court precedent, specifically, **Wyoming v. Houghton**, 526 U.S. 295 (1999), such a search can include containers belonging to passengers in the vehicle.

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Am. IV. Similarly, Article I, § 8 of the Pennsylvania Constitution reads,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

Pa.Const. Art. I, § 8.

The United States Supreme Court has opined, under similar circumstances, "In determining whether a particular governmental action

violates [the Fourth Amendment], we inquire first whether the action was regarded as an unlawful search or seizure under the common law when the Amendment was framed." **Houghton**, **supra** at 299. As recently noted by this Court, the original purpose of the early search and seizure amendments was aimed at prohibition of general warrants. **Commonwealth v. Haynes**, 116 A.3d 640, 648 (Pa.Super. 2015).

Indeed, anti-federalist writings condemned the original federal constitution's absence of a bill of rights, claiming that it would allow unreasonable searches and seizures. These writings, however, focused not on warrantless searches as occurred here, which were generally illegal because they were unauthorized by common law or statute save for limited circumstances, but on the issuance of general warrants. For example, Pennsylvania anti-federalist writer, Centinel,[2] in the first of his eighteen articles printed in Philadelphia between October 5, 1787 and April 9, 1788, wrote the following:

> Your present frame of government, secures to you a right to hold yourselves, houses, papers and possessions free from search, and therefore warrants granted without oaths or affirmations first made, affording sufficient foundation for them, whereby any officer or messenger may be commanded or required to search your houses or seize your persons or property, not particularly described in such warrant, shall not be granted.

---

[2] Centinel was a pseudonym for Samual Bryan, son of George Bryan, the latter of whom was a member of the early Pennsylvania Supreme Court.

Letters of Centinel, No. 1., reprinted in The Anti-Federalist Papers and the Constitutional Convention Debates (Ralph Ketcham, ed. 1986). He added, "you yourselves are called upon to say, whether your houses shall continue to be your castles; whether your papers, your persons and your property, are to be held sacred and free from general warrants[.]" *Id*. (emphasis omitted).

Those Pennsylvania representatives who opposed the federal constitution at the Pennsylvania ratification convention issued a minority report complaining of the lack of a bill of rights. They proffered an amendment stating, "warrants unsupported by evidence, whereby any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his or their property, not particularly described, are grievous and oppressive, and shall not be granted . . . ." The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents, reprinted in The Anti-Federalist Papers and the Constitutional Convention Debates, 239 (Ralph Ketcham, ed. 1986).

Modern day jurisprudence, however, has focused on warrantless searches and seizures, a problem that largely did not exist at the time of ratification due to the extremely limited authority possessed by peace officers. *See Haynes*, *supra* at 651 (discussing limited authority of constables). While some warrantless arrests would not have been considered against common law and therefore unreasonable, the type of

warrantless arrest allowed at that time was far more circumscribed than exists today. *See id*.

Even more restricted was a warrantless search, which was essentially permissible only in the context of a lawful arrest or perhaps if authorized by statute for purposes of enforcing commercial laws, *i.e.*, civil regulatory searches. *Id*. at 653 ("there was no common law authority for a warrantless search in a home, other than a search for the fleeing individual or of an individual's person incident to an arrest."); *See also* Thomas K. Clancy, The Importance of James Otis, Mississippi Law Journal, Vol. 82:2, 513 (2013) ("The [United States Supreme] Court's initial cases were notable for their premise that a warrant complying with the specifications of the Warrant Clause was required for all searches. The Court's only acknowledged exception in those early cases was for searches incident to arrest, which had a strong historical pedigree."); *Agnello v. United States*, 269 U.S. 20, 33 (1925) ("Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant."); Collection Act of 1789, 1 Stat. 29 (federal statute authorizing warrantless searches of ships to prevent smuggling);[3] *see also* Act of Dec. 21, 1780, ch. 190, § 10 (reprinted in The

---

[3] The relevant portion of the Collection Act read,

*(Footnote Continued Next Page)*

First Laws of the Commonwealth of Pennsylvania 422, 424-25 (John D. Cushing ed., 1984) (Pennsylvania statute authorizing warrantless searches of ships by customs official but requiring a warrant for dwellings suspected of housing smuggled goods).[4]

The United States Supreme Court first addressed a Fourth Amendment challenge to a warrantless search of a car in *Carroll v. United States*, 267 US. 132 (1925). *Carroll* stands for the proposition that warrantless searches of automobiles would not have been considered unreasonable at the time of ratification of the Fourth Amendment because Congress, under

*(Footnote Continued)* _____

> That every collector, naval officer and surveyor, or other person specially appointed by either of them for that purpose, shall have full power and authority, to enter any ship or vessel, in which they shall have reason to suspect any goods, wares or merchandise subject to duty shall be concealed; and therein to search for, seize, and secure any such goods, wares or merchandise; and if they shall have cause to suspect a concealment thereof, in any particular dwelling house, store, building, or other place, they or either of them shall, upon application on oath or affirmation to any justice of the peace, be entitled to a warrant to enter such house, store, or other place (in the daytime only) and there to search for such goods, and if any shall be found, to seize and secure the same for trial; and all such goods, wares and merchandise, on which the duties shall not have been paid or secured, shall be forfeited.

[4] A 1783 Massachusetts revenue search statute permitted warrantless searches by customs officials of ships and commercial premises if they provided a sworn writing showing just cause to suspect that uncustomed goods were being concealed. Virginia also authorized warrantless revenue searches of ships. Va. Acts, ch. 40, §§ 10-11 (1782) (reprinted in Virginia: The State at Large, 501 (William Waller Hening ed., 1822).

admiralty law and customs statutes, permitted the warrantless seizure and search of ships. Nonetheless, the Court therein set forth that whenever practicable, a warrant should be sought and used. *Carroll*, *supra* at 156.

The *Carroll* Court did not discuss or marshal a single case where the Fourth Amendment was even suggested to apply to a ship seizure, perhaps because ships were not considered to fall within the ambit of the Fourth Amendment's protections. A more apt analogy was to personal carriages. Justice Scalia, who authored *Houghton*, *supra*, himself has analogized cars to carriages with respect to the Fourth Amendment. *See United States v. Jones*, 132 S.Ct. 945, 951 n.3 (2012). In this respect, *Carroll* did cite to a short-lived 1815 statute, and wartime measure, authorizing warrantless searches by customs officers of any vessel, carriage, beast, or person whom they suspected possessed smuggled goods. Act of March 3, 1815, ch. 94 § 2, 3 Stat. 231. That law, never challenged on constitutional grounds, authorized customs officials **statutory** warrantless authority to search those engaged in commercial transportation.[5] Importantly, of course, *Carroll* was

---

[5] There are, of course, limits to the presumption that statutes passed near in time to the ratification of the federal constitution reflect evidence of that constitution's meaning. For example, few contend that the Alien and Sedition Acts were totally consistent with various constitutional protections.

not discussing common law and the laws being analyzed were premised on statutory grants of power to government agents.[6]

The common law did not authorize warrantless searches of any person traveling; rather, an officer could conduct a search pursuant to express statutory authority or after lawfully arresting the person. Thus, under the common law, absent statutory authority, peace officers could not conduct warrantless searches of those traveling via carriage unless done as a lawful search incident to an arrest. Nevertheless, the **Houghton** Court applied the

_____

[6] Frequently overlooked in discussion of warrantless searches is that they were only permitted, outside the context of a search incident to an arrest, if express statutory authority existed authorizing the government official to perform the search. While courts have concluded that the existence of these early statutes permitting warrantless searches for smuggled goods suggests that the framers would not have viewed warrantless searches outside a home as unreasonable, they have not considered that the framers expressly limited warrantless searches via the legislation permitting them. In the absence of such statutory law, the search would almost certainly have been considered against the law of the land, *i.e.*, unlawful, because there was an absence of authority to perform such a search.

Frankly, the historical distinction between statutory authorization and common law authority is an important one. Here, the First Congress' passage of statutory law permitting limited warrantless searches of commercial vehicles and merchants is evidence that a modern day statute authorizing such limited power to government officials would not run afoul of the Fourth Amendment. It, however, is not altogether strong evidence that police could conduct warrantless searches based on the common law. **See e.g.**, Tracy Maclin, *The Complexity of The Fourth Amendment: A Historical Review,* 77 B.U. L.Rev. 925, 945 (2014) (discussing colonial Massachusetts opposition to *ex officio* warrantless searches by customs officers).

*Carroll* holding that warrantless searches of cars are not unreasonable where probable cause exists.

In *Houghton*, *supra*, Wyoming Highway Patrol effectuated a traffic stop of a car for speeding and driving with a broken brake light. Three individuals were in the car. While questioning the driver, an officer noticed a hypodermic syringe in the driver's shirt pocket. The driver admitted that he used the syringe for drugs. Police then removed the two passengers, both women, from the car and searched the passenger compartment for drugs. In the backseat was a purse that belonged to Houghton, one of the passengers. Inside, police found a brown pouch and black wallet. The brown pouch contained methamphetamine and a syringe and the black wallet held an additional syringe with methamphetamine.

The suppression court denied a suppression motion and a jury convicted Houghton. The Wyoming Supreme Court reversed, concluding that police did not have probable cause to believe the passenger had committed a crime and therefore there was no probable cause to search her personal items. Although asserting that its Fourth Amendment analysis should begin with an examination of the common law at the time of the passage of the Fourth Amendment, the *Houghton* Court proceeded directly to discussing *Carroll*, *supra*, which analyzed statutory law at the time of the founding rather than common law.

The Court then relied on **United States v. Ross**, 456 U.S. 798 (1982), which also had based its analysis on **Carroll**. The **Ross** Court found that statutes allowing warrantless searches of vessels and beasts that imported merchandise showed that lawful searches of the vessel included any container that could contain the object of the search. **Houghton**, **supra** at 301 (citing **Ross**, **supra** at 820 n.26). Accordingly, the **Houghton** Court reasoned that where "there is probable cause to search for contraband in a car, it is reasonable for police officers-like customs officials in the founding era-to examine packages and containers without a showing of individualized probable cause for each one." **Houghton**, **supra** at 302.

**Houghton**, however, did not have a substantial impact in Pennsylvania when it was decided since, at the time, Pennsylvania case law interpreting Article I, § 8 of our state constitution provided Pennsylvanians with greater privacy protections. A warrantless search of an automobile was permissible if police had probable cause to search and exigent circumstances existed beyond the mobility of the car. **See Commonwealth v. White**, 669 A.2d 896 (Pa. 1995); **see also Commonwealth v. Rosenfelt**, 662 A.2d 1131 (Pa.Super. 1995), *abrogated by* **Gary**, **supra**.

In **Gary**, **supra**, the Pennsylvania Supreme Court switched course from its earlier mid-1990's cases that provided greater protections to citizens of Pennsylvania in their automobiles. It aligned Pennsylvania jurisprudence with the United States Supreme Court's interpretation of the

Fourth Amendment with regard to vehicle searches. In *Gary*, Philadelphia police observed a vehicle with tinted windows that they believed violated the Motor Vehicle Code. After stopping the automobile, the police detected the smell of marijuana emanating from the vehicle. Gary told police that there was marijuana in the car and police summoned a canine unit to conduct a sniff of the vehicle. Gary, who had been placed in the back of a police cruiser, then attempted to flee but was captured. Police found two pounds of marijuana under the front hood of the car.

Gary unsuccessfully litigated a suppression motion and was found guilty of possession with intent to deliver marijuana. This Court reversed and remanded for a new trial, concluding that, because Gary was in custody at the time of the search of the automobile, no exigent circumstances existed for the search. The Pennsylvania Supreme Court reversed this Court, finding that the only exigent circumstance required of an automobile is its mobility. Thus, it held that, where police possess probable cause to search a car, a warrantless search is permissible.

The *Gary* Court, nonetheless, did not face the situation where a passenger was also in the automobile and whether probable cause to search the car also authorized a search of a passenger's belongings therein. However, in light of the *Gary* Court's clear holding that Pennsylvania automobile search and seizure law and federal Fourth Amendment jurisprudence are coextensive, *Houghton* necessarily now applies.

Application of ***Houghton*** herein compels affirmance. Moreover, in this case, unlike ***Houghton***, police did have probable cause to believe that Juvenile was committing a crime. Here, the officer had probable cause to arrest Juvenile after he admitted to possessing drugs. The officer, therefore, would have been authorized to conduct a search incident to arrest of the backpack. Juvenile's claim fails.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015