J-A03019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT MANDATO | : | No. 1309 EDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000593-2020

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                **FILED FEBRUARY 14, 2022**

The Commonwealth appeals from the Jun 17, 2021 Order entered in the Court of Common Pleas of Pike County granting Appellee Robert Mandato's Motion to Suppress evidence obtained from a warrantless search conducted during a traffic stop. After careful review, we affirm.

We glean the following factual and procedural history from the suppression court's opinion and the certified record. At approximately 1:30 a.m. on October 16, 2020, Trooper Matthew Cruver was on patrol with his partner, Trooper Adam Thomas, when he observed a Chrysler sedan traveling 74 mph in a 65 mph zone. After confirming the car's speed using radar, Trooper Cruver initiated a traffic stop. Doing so activated a mobile video/audio recording device ("MVR") on the cruiser's dashboard, which recorded the entire interaction.

After the Chrysler pulled over, Trooper Cruver approached Appellee, the driver and sole occupant of the car, and asked for his license and registration. Because the car was registered to a different person, Trooper Cruver asked Appellee who the registered owner of the car was and where he was traveling. Appellee explained that the car was his mother's, and that he was traveling from New York to Pittsburgh. During this conversation, Trooper Cruver noticed the "strong odor of marijuana," and that Appellee was nervous and shaking. N.T. Suppression, 5/3/21 at 12.

Trooper Cruver asked Appellee to step out of the Chrysler for further questioning. Once Appellee was out of the car, Trooper Cruver asked him if he had smoked marijuana recently. Appellee replied that he had not. Trooper Cruver then told Appellee "we're gonna search the car; because of the smell we have probable cause to search the car." Suppression Ex. A, MVR, 10/16/20, at 27:00. The trooper then asked Appellee whether, if the troopers searched the vehicle, they would find any marijuana. Appellee responded "you're gonna find a lot." *Id.* at 27:50. The troopers never asked for consent to search the vehicle.

Trooper Cruver then performed field sobriety tests on Appellee. As he did so, approximately five minutes into the traffic stop, Trooper Thomas searched the vehicle, where he found "five to six laundry bags" of marijuana in the trunk. N.T. Suppression at 15. After discovering the marijuana, the troopers arrested Appellee. At some point, the troopers also called a tow truck for the car.

After the search, the troopers called for backup. Because they were the only troopers on duty in Pike County, this involved calling in troopers from nearby Wayne County, who arrived approximately an hour and a half later. The cruiser's recording of the stop shows that the troopers remained at the scene, with Appellee in their cruiser, for this entire period.

The troopers also contacted Corporal Shawn Smith, their supervisor, to begin applying for a warrant. Corporal Smith prepared an application for a warrant to search the vehicle, which included the discovery of the five bags of marijuana in its statement of probable cause. Following the county's normal warrant process, the district attorney approved the application at 11:55 a.m. the next morning, and the magistrate approved the application one hour later.

The Commonwealth charged Appellee with Possession of a Controlled Substance with Intent to Deliver, Possession of a Controlled Substance, and Possession of a Small Amount of Marijuana for Personal Use.[1] Appellee moved to suppress the evidence seized during the warrantless search of the vehicle.

At the suppression hearing held on May 3, 2021, Trooper Cruver and Corporal Smith testified to the above facts. Trooper Cruver also testified that he did not intend to allow Appellee to return to the vehicle. Trooper Cruver did not at any point testify that he believed that the conditions of the stop were dangerous, that he had any subjective concern that the evidence would be lost or that Appellee would flee, or that he otherwise believed at the time

---

[1] 35 Pa.C.S. § 780-113(a)(30), (a)(16), and (a)(31)(i), respectively.

that that there was any immediate need to conduct the search. Corporal Smith also testified regarding the "general process" for obtaining a late-night warrant in Pike County, which he estimated generally takes about four hours and involves paging an on-call attorney and magistrate, but did not testify that he followed that procedure in this instance. *Id.* at 27-28. The suppression court also took judicial notice that Pike County is a large, rural county with a small staff of troopers and magistrates. The Commonwealth admitted the MVR recording of the stop and the warrant application into evidence.

After the hearing, the suppression court granted the motion. This timely appeal followed. The Commonwealth presents the following issue:

> Whether the totality of the circumstances of the only state troopers in an entire county on midnight patrol, who discover probable cause to believe a vehicle contains evidence of a crime during a routine traffic stop, and the driver is not in custody, present exigent circumstances to conduct a warrantless search of the vehicle?

Commonwealth's Br. at 4.

On review of a grant of a suppression motion, our review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Stem*, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing."

***Commonwealth v. Neal***, 151 A.3d 1068, 1071 (Pa. Super. 2016).[2] We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003). "[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). Once a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047–48 (Pa. 2012) (citation omitted); ***see also*** Pa.R.Crim.P. 581(H).

At the suppression hearing, Appellee conceded that Trooper Cruver had probable cause to initiate the stop and to search the car. Likewise, the Commonwealth does not dispute that the troopers performed a search of the vehicle without a warrant. The sole area of dispute is whether exigent circumstances existed to support the Trooper's warrantless search of Appellee's vehicle.

The Fourth Amendment of the United States Constitution and Article I, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). The Pennsylvania

---

[2] Ordinarily, we would be limited to reviewing only the evidence that the defendant presented and uncontroverted evidence that the Commonwealth presented. ***Commonwealth v. Trahey***, 228 A.3d 520, 529 (Pa. 2020). Because only the Commonwealth presented evidence at the suppression hearing, however, we may consider all of the Commonwealth's evidence. ***Id.***

Constitution's protections are broader than those of the United States Constitution in this regard and extend to protect an "individual's privacy interest in all of his or her possessions or things in any place they may be, which would include, by necessity, when they are located inside of an automobile." *Commonwealth v. Alexander*, 243 A.3d 177, 202–03 (Pa. 2020) (quoting *Commonwealth v. Gary*, 91 A.3d 102, 143 (Pa. 2014) (Todd, J., dissenting)). The exclusionary rule safeguards these protections by barring the use of illegally obtained evidence in state prosecutions. *Commonwealth v. Arter*, 151 A.3d 149, 153–54 (Pa. 2016). The Pennsylvania courts do not recognize a good faith exception to the exclusionary rule in regards to Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Edmunds*, 586 A.2d 887, 905-906 (Pa. 1991).

Owing to these broader protections under our state Constitution, Pennsylvania Courts apply a "limited automobile exception" when reviewing warrantless searches of automobiles, requiring the Commonwealth to prove the existence of both probable cause and exigent circumstances in order to overcome a motion to suppress. *Alexander*, 243 A.3d at 207. "Obtaining a warrant is the default rule. If an officer proceeds to conduct a warrantless search, a reviewing court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was not reasonably practicable." *Id.* at 208.

Exigent circumstances exist when there is a "compelling need for official action and no time to secure a warrant." *Commonwealth v. Trahey*, 228

A.3d 520, 530 (Pa. 2020) (citation omitted). While this definition is intentionally broad, this "compelling need" generally exists "either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." ***Commonwealth v. Stewart***, 740 A.2d 712, 717 (Pa. Super. 1999) (citation omitted). "In evaluating the presence of an exigency, we consider the totality of the circumstances." ***Trahey***, 228 A.3d at 530. This, in turn, requires courts to conduct a "careful case-by-case assessment of exigency," rather than applying broad *per se* standards. ***Id.*** at 531 (citation omitted).

In its opinion accompanying its grant of the suppression motion, the suppression court found that, "[a]t the time of the warrantless search, [Appellee] was outside of the vehicle and under the observation of the [t]roopers, the car was in a stationary position[, Appellee] would not be permitted to get back into the vehicle[, and Appellee] already admitted that the [t]roopers would find a large amount of marijuana in the vehicle[;]" thus "both the vehicle and any alleged evidence which might be recovered from a search of the vehicle were securely out of the Defendant's reach." Suppression Ct. Op. at 5. As a result, it concluded, "suppression is warranted in the instant case as exigent circumstances did not exist." ***Id.***

We agree with the suppression court's conclusions. At the time the troopers performed the search, Appellee was outside of the vehicle and fully cooperating with the officers, so there was no reasonable basis to believe that he might flee. Likewise, as the trial court noted, Trooper Cruver did not testify

to any subjective concern that the evidence might be lost, that the search was necessary to address a safety threat, or that there existed any other circumstances that compelled the officers to immediately search the vehicle instead of waiting for a warrant. As such, the Commonwealth failed to meet its burden of proving that exigent circumstances existed to justify the warrantless search. The suppression court thus appropriately ordered the evidence suppressed.

In its brief, the Commonwealth argues that exigent circumstances existed because the police had no advance notice that the vehicle contained contraband prior to the stop, and so had no opportunity to obtain a warrant in advance, forcing them to wait several hours for a warrant given the late hour and Pike County's limited infrastructure. As a result, it argues, troopers were faced with the "Hobson's choice" of (1) conducing the warrantless search, (2) "leaving [Appellee] with the vehicle while they left to pursue obtaining a search warrant[,]" or (3) "detain[ing Appellee at the roadside] while tying up troopers from two counties for a minimum of four hours to obtain a search warrant." Commonwealth's Br. at 19.[3] This argument is unavailing. As the suppression court noted, the Commonwealth does not argue that waiting for a warrant would have posed a danger to the troopers

---

[3] We note that the Commonwealth ignores another option available to the troopers: arrest Appellee based on his admission that he was transporting a large amount of marijuana and impound the vehicle while waiting for the magistrate to approve the warrant application. *In re I.M.S.*, 124 A.3d 311, 317 (Pa. Super. 2015) ("officer had probable cause to arrest [the defendant] after he admitted to possessing drugs").

or risked the destruction of the evidence; at most, it argues that waiting for the warrant would have been inconvenient. This does not meet the Commonwealth's burden of demonstrating a compelling need for official action and a lack of time to secure a warrant. Moreover, the circumstances that the Commonwealth argues create exigency—that the officers had no advance notice of the contraband and that waiting for a warrant would tie up the county's scarce resources—apply to virtually every late-night traffic stop conducted in a rural county. As such, the Commonwealth fails to articulate the kind of case-specific circumstances necessary to show exigency. Its arguments, thus, fail.

At the suppression hearing, the Commonwealth failed to meet its burden of proving the existence of exigent circumstances justifying the warrantless search of Appellee's vehicle. As a result, the suppression court did not abuse its discretion in granting the Motion to Suppress.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2022

- 9 -