J-S23026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARNELL HAROLD KELLAM | : | |
| | : | |
| Appellant | : | No. 42 MDA 2022 |

Appeal from the PCRA Order Entered December 8, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000386-2017

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED: NOVEMBER 17, 2022**

Darnell Harold Kellam appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Kellam argues his trial counsel was ineffective for failing to successfully argue his motion to suppress, and that he is entitled to relief pursuant to **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020). We affirm.

In early 2017, the police stopped Kellam's automobile for a violation of the motor vehicle code and searched it without a warrant. They thereafter charged Kellam with persons not to possess firearms, firearms not to be carried without a license, and possession with intent to deliver (heroin).[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105 and 6106, and 35 P.S. § 780-113(a)(30), respectively.

Before trial, Kellam filed a motion to suppress the evidence. The court held a hearing in June 2017. It later summarized the evidence presented at the hearing as follows:

At the time of [Kellam's] arrest [on February 10, 2017], [Officer Joshua] Bell had over five years of experience as a law enforcement officer with the Williamsport Bureau of Police, having joined the Bureau in August of 2011. Bell had additional law enforcement experience prior to his tenure with the Williamsport police, including narcotic agent training through the Attorney General's office and significant experience with narcotic interdiction policing.

On February 10, 2017, Bell was operating a marked patrol car and was patrolling the area of Campbell Street and High Street when he observed a black Nissan Altima travelling south on Campbell Street. Bell observed that the vehicle was equipped with heavy window tint which prevented him from observing the interior of the vehicle. Bell recognized that the color, make, and model of the car, along with the heavy window tint, matched the description of a vehicle that a confidential informant had previously indicated was involved in trafficking heroin from Philadelphia to Williamsport. The confidential informant who shared this information with Bell had made a number of controlled purchases for Bell in the past during his narcotic interdiction efforts. Bell's prior interdiction efforts had a strong record of corroborating the information obtained from this informant.

Bell effected a vehicle stop due to the heavy window tint on the vehicle in the area of Market Street and Little League Boulevard. Upon talking with [Kellam] and collecting [Kellam's] license, vehicle registration, and insurance, [Bell] verified that [Kellam] was the owner of the vehicle, and that the area of registration was Philadelphia.

While Bell was speaking to [Kellam] from outside of the driver's side window, Bell's attention was drawn to several rubber bands hanging from the windshield wiper control arm. Bell recognized from his experience in narcotics trafficking investigations that these rubber bands were often used to bundle large amounts of money, and that in his experience, a vehicle control arm is a common location for drug traffickers to keep such rubber bands.

Bell later testified that he had encountered rubber bands fashioned this way in vehicle stops that have led to arrests between eight and ten times prior to his encounter with [Kellam] in the present case.

When Bell asked [Kellam] what the rubber bands were for, he responded that he just "had them," and that Bell was the first officer who ever asked him about the rubber bands. Bell asked [Kellam] where he was coming from, to which [Kellam] responded that he had been visiting family. Bell asked [Kellam] where his family lived, and [Kellam] responded "Louisa." Motor Vehicle Recording (MVR) at 4:09. Bell asked [Kellam] what block of Louisa his family lived on, and [Kellam] responded, "Right there where everything be happening." *Id.* at 4:18. Bell recognized the area [Kellam] was referring to as the area colloquially known as the "400 block," an area known for its high criminal drug activity. Bell asked [Kellam] for confirmation, whether he was talking about the 400 block, and [Kellam] confirmed it. *Id.* at 4:21.

Bell returned to his patrol car with [Kellam's] license and vehicle documentation, and proceeded to contact county control to conduct a criminal history inquiry of [Kellam]. At this time, another officer with the Williamsport Bureau of Police arrived at the scene. Dispatch advised Bell that [Kellam] had been arrested multiple times in the past several years for firearms violations and narcotics violations. Bell returned to [Kellam's] vehicle and asked [Kellam] to step out of the vehicle. [Kellam], Officer Bell, and the second officer relocated to a space in between the two marked patrol cars.

Bell proceeded to advise [Kellam] that . . . he was aware of [Kellam's] criminal history, and made [Kellam] aware of his concern that [Kellam] had either firearms or narcotics on his person or in his vehicle. Bell asked [Kellam] if he was in possession of any narcotics or firearms either on his person or in his vehicle, and [Kellam] responded that he was not. Bell then asked [Kellam], "Alright, is there any issue with me looking?" while pointing at [Kellam's] vehicle, and [Kellam] replied, "Nope." MVR at 18:35.

Taking [Kellam's] response as consent to perform a vehicle search, Bell began walking towards the passenger compartment of [Kellam's] vehicle. When [Kellam] asked Bell if he could return to his vehicle, Bell directed [Kellam] to stand next to the second officer on the scene while he performed the search. As Bell continued to approach the driver door of [Kellam's] vehicle,

[Kellam] said, "Oh, you're gonna check the car?" to which Bell responded, "Yeah." MVR at 18:40.

During the search, Bell observed that [Kellam] was in possession of three cellular phones, which he recognized as an additional indicia of drug sale activity. Bell also observed that the headliner of the vehicle appeared as though it had previously been pulled away from its corresponding connection point with the roof of the vehicle. Bell knew from previous narcotics investigations that the inside of a vehicle's headliner is a common location to conceal contraband.

Finally, Bell exited the driver's side door of the vehicle, walked around the vehicle, and began searching via the passenger's side door. Bell observed that part of the panel of the center console was loose and appeared to have been previously removed. Bell pulled on the panel slightly, causing it to fall off. Concealed under the air vent, Bell located a firearm and identified its serial number. Dispatch advised Bell that the firearm, a .40 caliber Ruger pistol, had been reported stolen out of Milton, Pennsylvania. In the same area where he located the pistol, Bell also found a green bag containing a clear sandwich bag, which Bell recognized as being commonly used as a distribution bag for controlled substances. Bell proceeded to take [Kellam] into custody.

Once in custody, a search of [Kellam] incident to arrest yielded three blue wax bags of heroin in [Kellam's] left sock, $1,100 concealed in [Kellam's] underwear, an additional $125 in [Kellam's] pockets, and packages of black rubber bands often used to bundle heroin for sale in [Kellam's] shoe.

***Commonwealth v. Kellam***, No. 1149 MDA 2018, 2019 WL 3021156, at *2–

4 (Pa.Super. 2019) (unpublished memorandum) (quoting Trial Court Opinion

and Order, 7/18/17, at 1-5).

The court denied the suppression motion, and, following a bench trial,

convicted Kellam of the above charges.[2] The court sentenced him to five to 10

years' incarceration.

_____

[2] The court found Kellam not guilty on a charge of receiving stolen property.

- 4 -

Kellam filed a direct appeal, arguing the court erred in denying his suppression motion because Officer Bell had lacked probable cause to search his vehicle. Kellam argued the vehicle stop was based only on the color, make, and window tint of his vehicle, and its Philadelphia registration, "a city of millions within three hours of Williamsport." Kellam's Direct Appeal Brief at 12. Kellam also argued that Officer Bell had failed to testify regarding the details of the confidential informant's controlled drug buys, and that Kellam had never told Officer Bell which block of Louisa Street he was coming from. Kellam further argued that common rubber bands are not indicative of criminal activity, and that Officer Bell had not testified as to whether any of Kellam's previous arrests had resulted in convictions.

We affirmed in July 2019. We applied the standard announced in **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) (opinion announcing judgment of the Court) – that the police needed only probable cause to search a vehicle without a warrant, because the inherent mobility of an automobile creates exigent circumstances. **Kellam**, 2019 WL 3021156, at *2. We affirmed the court's conclusion that probable cause had existed, based on the following:

> Specifically, a credible informant alerted Officer Bell to illegal narcotics activity being conducted by a vehicle fitting the description of the one being operated by [Kellam]. In addition, Officer Bell observed indications of narcotics trafficking, such as rubber bands hanging on the steering column, heavily tinted windows, and the presence of multiple cell phones in the vehicle. Also, [Kellam] told Officer Bell that he was coming from Louisa Street, an area which is known as a narcotics trafficking area, as well as for "officer safety issues." Finally, Officer Bell requested a

criminal history check on [Kellam], which returned information regarding [Kellam's] prior involvement with narcotics trafficking and firearms violations.

*Id.* at *4 (citations to N.T. of suppression hearing omitted).

Kellam filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. The Court denied the petition on December 9, 2019.

The following month, in January 2020, Kellam filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition and supplemental amended petition arguing that trial counsel had been ineffective when arguing that the police had lacked probable cause to effectuate a warrantless vehicle search. The court issued notice of its intent to dismiss the petition without a hearing, and on January 5, 2021, dismissed the petition.

Kellam filed a motion for reconsideration on January 11, 2021. He argued that he should be granted relief under **Alexander**, which had been decided shortly beforehand, on December 22, 2020. The court granted the motion on February 1, 2021, and allowed Kellam leave to further supplement his petition, which he did in April and July 2021. After considering Kellam's supplemental petition, the court again issued notice of its intent to deny the petition without a hearing, and, in December 2021, dismissed it.

Kellam appealed. He raises the following:

1. Whether Counsel provided ineffective assistance during the suppression hearing in this matter, in that he was apparently unprepared to argue that the search was not supported by probable cause?

2. Whether Counsel was ineffective in failing to raise the issue of the warrant or exigency requirement to search Appellant's vehicle before the suppression court?

3. Whether the grant of allocator in **Commonwealth v. Alexander**, which imposed a warrant or exigency requirement for the search of vehicles in Pennsylvania, entitles Appellant to relief?

Kellam's Brief at 7 (unpaginated).

We review the denial of post-conviction relief to ensure "the PCRA court's determination is supported be evidence of record and . . . free of legal error." **Commonwealth v. Ligon**, 206 A.3d 515, 518 (Pa.Super. 2019). We employ a *de novo* standard of review to the PCRA court's legal conclusions. **Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa.Super. 2018).

Kellam's first two issues are claims of ineffective assistance of counsel. Counsel is presumed to be effective. **Ligon**, 206 A.3d at 519. To prove otherwise, a petitioner must plead and prove each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." **Id.** (citation omitted).

Kellam first argues that trial counsel was ineffective because he did not successfully argue the search of Kellam's vehicle was not supported by probable cause. Kellam contends that trial counsel should have raised the following when arguing the motion to suppress:

a. Officer Bell did not believe he had probable cause to search, as it was clear he was seeking additional information to attain probable cause to search. This explains why he was seeking consent for the search in lieu of proceeding on probable cause.

b. Officer Bell relied on a "tip" from an informant three to four months prior to this stop. Suppression counsel did not argue the staleness of the "tip."

c. Officer Bell mistook [Kellam] for another individual who was involved in a crime involving firearms. He also generalized information about [Kellam] based upon his surname: "The Kellams are all gun people" (MVR at 6:00)

d. Officer Bell inquired with dispatch about [Kellam's] prior record. When a specific conviction could not be identified, Officer Bell can be heard on the video stating, "If I had a gun or drug thing, I would get a dog." (MVR 15:58)

e. Officer Bell inquired whether there were any drug dogs available, presumably to determine whether a less intrusive type of search could be undertaken. (MVR 15:45)

f. Just prior to attempting to seek consent for the search, Officer Bell can be heard stating on the recording, "I'm not quite sold that this cat's not holding" (MVR 15:58). This statement is in reference to Mr. Kellam possessing drugs.

Kellam's Br. at 13-14.

Kellam stresses that while the totality of the circumstances must make the probable cause determination an objectively reasonable one, the officer's subjective belief must be part of the analysis, as the court must view the circumstances "as they appeared to the arresting officer." *Id.* at 16 (citing ***Commonwealth v. Dennis***, 612 A.2d 1014, 1016 (Pa.Super. 1992)). And here, Kellam argues, Officer Bell did not believe he had probable cause to search.

The PCRA court found no merit to this claim, as the totality of the circumstances established probable cause under an objective standard:

> While Kellam's argument may have a surface appeal, Kellam neglects the law as it relates to Fourth Amendment jurisprudence. Contrary to Kellam's belief and argument, Officer Bell's subjective belief was not at all relevant to the probable cause analysis. The proper analysis for Fourth Amendment jurisprudence is objective. An action is reasonable, regardless of the officer's state of mind, as long as the evidence viewed objectively justifies the action.
>
> . . .
>
> Moreover and as the Superior Court noted in its opinion in this case, probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has committed or is committing an offense. . . . The well-established standard for evaluating if probable cause exists is consideration of the "totality of the circumstances."

PCRA Court Opinion and Order, 11/12/20, at 4-5.

We agree. Nothing Kellam has offered alters our previous determination that Officer Bell had probable cause, based on the totality of the circumstances. We reiterate that we apply an objective standard to motions to suppress, not a subjective one. **See Commonwealth v. Coughlin**, 199 A.3d 401, 410 (Pa.Super. 2018) (*en banc*) (stating "the officer's subjective motivation is irrelevant" to whether officer's actions were reasonable under the Fourth Amendment). Kellam's trial counsel was therefore not ineffective for failing to argue these points before the suppression court or on Kellam's direct appeal. **See Ligon**, 206 A.3d at 519 (stating "counsel is not ineffective for failing to raise a claim that is devoid of merit").

Kellam next argues his trial counsel was ineffective for failing to argue that Officer Bell was required to obtain a warrant prior to searching his vehicle, *i.e.*, that the court should not have followed *Gary*. He claims that as a plurality decision, *Gary* was not binding precedent. He also argues trial counsel should have distinguished his case from *Gary* because he was pulled over for a traffic violation during daylight hours, whereas Gary had admitted to possessing contraband and had started to flee when the police performed a canine search of his vehicle at night.

In denying relief, the PCRA court observed that *Gary* was the prevailing law at the time Kellam's case was before the trial court and on direct appeal:

> *Alexander* overruled the prior ruling in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014)[(OAJC)], which had held that the search and seizure provision of Article I, Section 8 of the Pennsylvania Constitution provides no greater protection than does the Fourth Amendment of the United States Constitution with regard to warrantless searches of automobiles. The court in *Gary* concluded that, in line with United States Supreme Court decisions interpreting the Fourth Amendment, the only prerequisite for a warrantless search of a motor vehicle is probable cause to search, with no exigency required beyond the inherent mobility of a motor vehicle.
>
> In *Alexander*, however, the Supreme Court concluded that the Pennsylvania Constitution affords greater protection than the Fourth Amendment and reinstated the pre-*Gary* line of cases that required police to have both probable cause and exigent circumstances before conducting a warrantless search of an automobile. . . .
>
> The *Alexander* decision . . . did not establish a new principle of law until after the disposition of this case concluded on direct review.

PCRA Court Opinion and Order, 10/22/21, at 3 (citation omitted). The court therefore concluded that Kellam's counsel was not ineffective for failing to argue that *Gary* did not control his case:

> [T]he quality of counsel's stewardship is based on the state of law as it existed at the time of trial; counsel is not ineffective if he fails to predict future developments or changes in the law. *Commonwealth v. Gibble*, 863 A.2d 455, 464 (Pa. 2004) ("Counsel cannot be deemed ineffective for failing to predict developments or changes in the law"); *see also Commonwealth v. Hill*, 104 A.3d 1220, 1240 (Pa. 2014) ("review of counsel's conduct cannot indulge 'the distorting effects of hindsight,' but instead, counsel's performance must be judged in the light of the circumstances as they would have appeared to counsel at the time"); *Commonwealth v. Spots*, 896 A.2d 1191, 1238 (Pa. 2006) ([it] is well established that the effectiveness of counsel is examined under the standards existing at the time of performance).

*Id.* at 4-5.

We agree. *Gary* constituted a binding holding, albeit narrowed to the rationale of the sole concurrence—that certainty and consistency will flow from the application of a bright-line rule consistent with the federal automobile exception to the warrant requirement. *Alexander*, 243 A.3d at 197-98. This Court therefore applied *Gary* to the instant case on direct appeal, just as we had done in other cases prior to Kellam's suppression hearing. *See, e.g., Commonwealth v. Runyan*, 160 A.3d 831, 838 (Pa.Super. 2017) ("Based on the totality of the circumstances, we conclude the officers had probable cause to believe the vehicle contained contraband, which was all that was necessary to justify the warrantless search of the vehicle"); *In re I.M.S.*, 124 A.3d 311 (Pa.Super. 2015). We will not, in hindsight, fault counsel for failing

to anticipate that *Gary* would be overruled or to craft the same argument that convinced the Supreme Court to overrule it. *Hill*, 104 A.3d at 1240. Counsel cannot be found ineffective for failing to predict future changes in the law. *See Commonwealth v. Colon*, 230 A.3d 368, 377 (Pa.Super. 2020).

Finally, Kellam argues that *Alexander* should retrospectively apply to his case. That is, he argues that because there were no exigent circumstances to excuse the police from obtaining a warrant to search his vehicle, the evidence should be suppressed.

As discussed above, *Gary* was controlling law at the time Kellam argued his suppression motion and during his direct appeal. The Pennsylvania Supreme Court decided *Alexander* in December 2020, approximately a year after it had denied Kellam's petition for allowance of appeal and Kellam's judgment of sentence had become final.

A new constitutional rule may only be applied retroactively to finalized convictions if it is a substantive rule or a watershed rule of criminal procedure. *Commonwealth v. Olson*, 218 A.3d 863, 867 (Pa. 2019). Whether it applies retroactively is a question of law, "as to which our standard of review is *de novo* and our scope of review is plenary." *Id.* at 868.

Kellam does not argue that *Alexander* announced a substantive rule or a watershed rule of criminal procedure. Nor does he argue any other basis for retroactive application of *Alexander*. Moreover, this Court has previously found that a rule related to whether the actions of police officers comport with the Fourth Amendment does not qualify as a substantive rule. *See Olson*,

218 A.3d at 875 (finding **Birchfield v. North Dakota**, 579 U.S. 438 (2016), did not apply retroactively). Moreover, we have determined that **Alexander** does not apply even to cases that were pending on direct appeal at the time it was announced, unless the defendant properly preserved the issue. **Commonwealth v. Heidelberg**, 267 A.3d 492, 503 (Pa.Super. 2021) (*en banc*), *appeal denied*, 279 A.3d 38 (Pa. 2022); **Commonwealth v. Moore**, 263 A.3d 1193, 1199 (Pa.Super. 2021), *appeal denied*, 278 A.3d 857 (Pa. 2022). Kellam has failed to establish that we should apply **Alexander** retrospectively to his case on collateral review.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2022