J-S12037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VERNON ANDRE COX, JR. | : | |
| | : | |
| Appellant | : | No. 1061 MDA 2022 |

Appeal from the PCRA Order Entered June 20, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001435-2017

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  JUNE 2, 2023**

Appellant, Vernon Andre Cox, Jr., appeals from the order of the Court of Common Pleas of York County that denied his first petition filed under the Post Conviction Relief Act (PCRA).[1]   After careful review, we affirm.

On March 9, 2018, Appellant was convicted by a jury of first-degree murder, second-degree murder, and third-degree murder for the January 15, 2017 shooting death of Ryan Small (Victim).  N.T. Trial at 518-20.  The facts out of which these convictions arose were set forth by this Court in Appellant's direct appeal as follows:

> On January 15, 2017, [Appellant] contacted Leon White and asked if White could obtain some marijuana for [Appellant]. White agreed, and proceeded to [Appellant's] residence. When White

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

arrived, he contacted [Victim] to set up a drug transaction. [Appellant] and White then left [Appellant's] residence and walked to the designated meeting place. As they waited for [Victim] to arrive, White asked [Appellant] how much money he had. [Appellant] told White that he had seventy dollars. White informed [Appellant] that [Victim] only sold marijuana for eighty dollars. In response, [Appellant] indicated that, if [Victim] did not give him the marijuana for seventy dollars, [Appellant] would take it. [Victim] thereafter arrived at the designated location in a vehicle in which he was the sole occupant. [Appellant] went to the front passenger side of the vehicle, opened the door, and started shooting. As [Victim] drove away, [Appellant] pursued the car on foot, and fired another shot. [Victim], who was shot in the torso and groin, veered onto another street and crashed. [Victim] died as a result of his gunshot wounds.

*Commonwealth v. Cox*, 231 A.3d 1011, 1014 (Pa. Super. 2020).

At trial, White testified that he was with Appellant at the time and that the shooting and events leading up to it transpired as described above. N.T. Trial at 181-91, 199, 202-03, 228-30. The Commonwealth also introduced evidence that the gun that was used to shoot and kill Victim was found in the house where Appellant was staying, which was near the place where the murder occurred. *Id.* at 256-57, 261-62, 266, 288-92, 301-03, 323-24, 335-37, 342-43, 362-63, 365-68. Gunshot residue was found on both Appellant's and White's clothing. *Id.* at 395-98, 400. The two residents of the house where Appellant was staying testified at trial that Appellant left with another man the evening of the murder and returned to the house after they heard Victim's car crash, and one of the residents, Rayniqua Olds, testified that Appellant ran into the house when he returned and "looked shook up and asked if we heard or seen anything." *Id.* at 290-95, 303-05. In addition, a

cellmate of Appellant testified that Appellant told him that Appellant shot Victim when Appellant and White were robbing Victim. *Id.* at 242-48.

Appellant did not testify at trial. N.T. Trial at 434. In a statement to police introduced in evidence by the Commonwealth, however, Appellant admitted that on the night of the murder, White came to the house, he left the house with White, and White set up to buy marijuana from Victim. *Id.* at 413. Appellant in his statement said that White told him that White was going to rob Victim, that he, Appellant, went back to the house, and that after the crash, he came out to see what happened and White gave him something wrapped in a knit hat that he took back in the house. *Id.* at 413-14.

On April 12, 2018, the trial court imposed the mandatory sentence of life imprisonment without the possibility of parole for Appellant's first-degree murder conviction, and the other two counts of murder merged with first-degree murder for sentencing purposes. N.T. Sentencing at 16; Sentence Order. Appellant did not file any post-sentence motion and filed a timely direct appeal. On April 22, 2020, this Court affirmed Appellant's judgment of sentence. Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On December 23, 2020, Appellant filed the instant timely *pro se* PCRA petition. The PCRA court appointed counsel to represent Appellant, and PCRA counsel on March 8, 2022 filed an amended PCRA petition. Appellant asserted three claims of ineffectiveness of trial counsel in this amended PCRA petition,

including the two claims that are the subject of this appeal. Amended PCRA Petition at 5-10. On May 26, 2022, the PCRA court held a hearing on this PCRA petition at which Appellant's trial counsel was the only witness. On June 20, 2022, the PCRA court entered an order denying Appellant's PCRA petition. PCRA Court Order and Opinion, 6/20/22, at 1-2. This timely appeal followed.

In this appeal, Appellant argues that the PCRA court erred rejecting the following two PCRA claims: 1) that trial counsel was ineffective for failing to object to testimony concerning the condition of the gun on the ground that it was not included in the firearms expert's report; and 2) that trial counsel was ineffective for asking Commonwealth witness Olds on cross-examination if she ever saw Appellant with a gun. Our review of an order denying a PCRA petition is limited to determining whether the record supports the PCRA court's findings and whether its decision is free of legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015); *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa. Super. 2020) (*en banc*); *Commonwealth v. Smith*, 181 A.3d 1168, 1174 (Pa. Super. 2018). We must view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. *Mason*, 130 A.3d at 617; *Johnson*, 236 A.3d at 68; *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*).

Both of Appellant's issues are claims that trial counsel was ineffective. To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the defendant must prove: (1) that the underlying claim is of

arguable merit; (2) that counsel's action or inaction had no reasonable basis designed to effectuate her client's interest; and (3) that he suffered prejudice as a result of counsel's action or inaction. *Mason*, 130 A.3d at 618; *Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa. Super. 2020); *Commonwealth v. Ligon*, 206 A.3d 515, 519 (Pa. Super. 2019). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *Mason*, 130 A.3d at 618; *Selenski*, 228 A.3d at 15; *Smith*, 181 A.3d at 1175.

Appellant's first issue is based on the fact that, in addition to opining that the bullets that killed Victim were fired by the same gun that was found in the house where Appellant was staying, the Commonwealth's firearms expert testified that while the gun was functional and capable of discharging ammunition, "the forward movement of the slide at its most extreme forward position was a little sluggish" and that this was due to the recoil spring inside the gun being turned around backward. N.T. Trial at 363-64. The information concerning the defect in the gun was not in the expert's report, although he testified that it was in his notes from his examination of the gun. *Id.* at 364, 423-25; Commonwealth Ex. 7. Appellant contends that the testimony concerning sluggish movement of the slide and the backward spring was inadmissible because it was not included in the expert's report as required by Rule 573(B) of the Pennsylvania Rules of Criminal Procedure and that trial counsel had no reasonable basis for failing to object to its admission.

Appellant does not contend that this testimony had any effect on the expert's identification of the gun as the murder weapon or the credibility of the expert's opinions. The prejudice that Appellant claims resulted from this evidence was that it bolstered the credibility of the cellmate's incriminating testimony because the cellmate testified that Appellant told him that the gun with which he shot Victim jammed a lot because the spring in the gun "was messed up." N.T. Trial at 246.

The PCRA court found that this claim of ineffectiveness failed both because trial counsel had a reasonable basis for her actions and because her failure to object did not cause Appellant prejudice. PCRA Court Order and Opinion, 6/20/22, at 9-11; PCRA Court Opinion, 9/23/22, at 6-7. We conclude that the record does not support the PCRA court's finding that trial counsel had a reasonable basis for failing to object. Trial counsel did not testify that allowing the expert's testimony concerning the firearm's defect to come into evidence had any possible benefit to Appellant's defense or that she made a strategic judgment that it was more beneficial to Appellant to not object. N.T. PCRA at 10-15. Rather, she testified that she thought that this testimony was possibly objectionable but was unsure whether an objection would have been sustained, and admitted that "[t]hinking back, maybe I should have" objected. *Id.* at 11, 14-15.

The PCRA court, however, did not err in finding that Appellant failed to show the prejudice required to prove this PCRA claim. To satisfy the prejudice

element of an ineffective assistance of counsel claim, Appellant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Commonwealth v. Jones*, 210 A.3d 1014, 1018-19 (Pa. 2019); *Mason*, 130 A.3d at 618; *Stewart*, 84 A.3d at 707. A reasonable probability of a different result is a probability sufficient to undermine confidence in the outcome. *Jones*, 210 A.3d at 1019; *Commonwealth v. Postie*, 200 A.3d 1015, 1023 (Pa. Super. 2018) (*en banc*); *Stewart*, 84 A.3d at 707.

Here, there are two reasons that there is no reasonable probability that objecting to the expert's testimony on the gun's defect would have led to a different result in Appellant's trial. First, Appellant did not show that an objection would have resulted in exclusion of the testimony. Rule 573(B) provides in relevant part:

> (B) Disclosure by the Commonwealth.
>
> (1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> *           *           *
>
> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 573(B)(1)(e) (emphasis omitted). The reports that the Commonwealth provides with respect to its experts must state "the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion." Pa.R.Crim.P. 573(B)(2)(b).

Rule 573 does not require automatic exclusion of evidence of all testimony by an expert that was not included in his report; rather, it provides that the trial court with a variety of options to address the situation. Pa.R.Crim.P. 573(E); *Commonwealth v. Roles*, 116 A.3d 122, 132 (Pa. Super. 2015). Rule 573(E) provides that if a party has violated its discovery obligations, "the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E). There is no showing here any sanction short of exclusion would have had any effect on the evidence or arguments that the jury heard at Appellant's trial.

The opinions to which the firearms expert testified were that the gun that was found in the house where Appellant was staying was functional and capable of discharging ammunition and that the bullets in Victim's body, the bullet fired into the trunk of Victim's car, and the spent cartridges found at the scene were fired from that gun. N.T. Trial at 362-63, 365-68. Those

- 8 -

opinions were fully disclosed in his expert report. Commonwealth Ex. 7. The testimony not disclosed in the expert report concerning the sluggish movement of the gun's slide and the position of its recoil spring was not part of the expert's opinions, had no effect on the basis for or credibility of those opinions, and did not itself incriminate Appellant. Appellant introduced no evidence that the failure to disclose such additional information concerning the expert's examination had any effect on his counsel's preparation for trial. It is therefore questionable whether the trial court would have imposed the sanction of exclusion of this portion of the expert's testimony if an objection had been made.

Second, it cannot be concluded that there is a reasonable probability that the outcome of Appellant's trial would have been different even if the testimony were excluded. While the Commonwealth argued that the evidence concerning the gun's defect was not in the discovery documents that Appellant received and that the cellmate's testimony concerning what he claimed Appellant told him therefore could not have been based on information found by reading Appellant's discovery, N.T. Trial at 461-64, the only possible effect of excluding the expert's testimony on the defect in the gun would be to make the cellmate's testimony less credible. This, however, is not a case where jailhouse confession evidence was the primary evidence of the defendant's guilt. Even if the cellmate's testimony were disregarded in its entirety, the evidence of Appellant's guilt was overwhelming.

White testified that he was with Appellant and saw Appellant shoot Victim. N.T. Trial at 181-91, 199, 202-03, 228-30. While White had a clear motive to lie to exculpate himself and obtain favorable treatment on the charges against him, *id.* at 195-98, 206-07, his testimony was corroborated by evidence not subject to those credibility issues. It was undisputed that Appellant was with White near the murder scene close to the time of the murder. Appellant admitted in a statement to police that he was with White the night of the murder and that White was contacting Victim to set up a marijuana purchase. *Id.* at 413. While Appellant in his statement claimed that he returned to the house where he was staying before the murder, *id.* at 413-14, both residents of the house testified that Appellant returned there after the car crash that followed the shooting. *Id.* at 290-95, 303-05.

In addition, physical evidence tied Appellant to the crime. Appellant's clothes had gunshot residue on them. N.T. Trial at 396-98, 400. The gun that was used to shoot Victim was found where Appellant was staying, and the other occupants of the house testified that the gun was not theirs. *Id.* at 256-57, 261-62, 266, 288-92, 301-03, 307, 313, 323-24, 335-37, 342-43, 362-63, 365-68. Appellant in his statement to police contended that the gun was in his house because Wood gave him something wrapped in a knit hat. *Id.* at 414. This claim, however, was contradicted by the evidence that no gunshot residue was found on any part of the knit hat. *Id.* at 399-400, 404-05. Given the totality of the other evidence tying Appellant to the murder,

there is not a reasonable probability that exclusion of an item of non-inculpatory evidence that only affected the credibility of the cellmate's testimony would have resulted in a different verdict. Appellant therefore cannot satisfy the requirement that he prove prejudice with respect to this claim for PCRA relief.

Appellant's second claim of error concerns the testimony of one of the residents of the house where Appellant was staying concerning the gun that was found in their house. Both of these witnesses testified on direct examination that the gun was not theirs and that they had never seen anyone in their house with a gun. N.T. Trial at 290, 307. Appellant's trial counsel asked both of these witnesses on cross-examination whether they had ever seen Appellant at the house with a gun. *Id.* at 297, 308. The first of these two witnesses answered, consistently with her direct testimony, that she never saw Appellant with a gun. *Id.* at 297. Olds, however, testified on cross-examination as follows:

> Q. And you indicated that you never saw anyone in the house with a gun before. Did you ever see my client with a gun?
>
> A. Yes.
>
> Q. You saw him with a gun before?
>
> A. Mm- hmm.
>
> Q. In the house?
>
> A. Yes.

Q. Okay. So were you lying before when you said you never saw anyone in the house with a gun?

A. No.

*Id.* at 308. Appellant contends that trial counsel was ineffective in the above cross-examination of Olds.

The PCRA court found that this claim of ineffectiveness failed because trial counsel had a reasonable basis for her actions. PCRA Court Order and Opinion, 6/20/22, at 13-15; PCRA Court Opinion, 9/23/22, at 8-9. This determination is both supported by the record and legally correct. Trial counsel testified at the PCRA hearing that she believed that the question would produce a favorable answer based on Olds' prior statements and testimony, that she wanted to bring out that favorable testimony to close the cross-examination on a high note, and that she was shocked by Olds' answer because it directly contradicted her prior statements and testimony. N.T. PCRA at 16, 25-26, 28-29. Trial counsel testified that she did not further cross-examine Olds on this beyond pointing to the contradiction of her direct testimony or introduce other evidence of Olds' prior statements because she did not want to draw additional attention to the adverse answer or take chances on what else Olds might say if further examined. *Id.* at 17-18, 26.

These judgments by trial counsel were patently reasonable. Trial counsel had reason to believe that Olds would answer that she never saw Appellant with a gun in the house at any time, as Olds had just given the following testimony on direct examination:

Q. Now, are you aware whether a gun was found in the house that day?

A. I was aware it was found that day. I had no knowledge it was there until [the police] said it was there.

Q. Had you ever seen anyone in your house with a gun before?

A. No.

N.T. Trial at 307. Indeed, Olds had specifically testified that she would not have allowed Appellant to stay at the house if he had a gun. *Id.* Trial counsel, when Olds contradicted her prior testimony, responded by immediately pointing out the contradiction. *Id.* at 308.

Trial counsel's reasons for not further exploring the contradiction were equally reasonable. The testimony, while unfavorable, was only that she saw Appellant in the house with a gun at some unidentified time in the past, not that Olds saw him with a gun near the time of the murder or that she ever saw him with the gun that was found in the house. At a minimum, further exploration of her inconsistent statements would emphasize the unfavorable answer and make it appear more important to the case than it was. In addition, given Olds' complete contradiction of her prior statements and testimony, trial counsel no longer knew what Olds was likely to say and had reason to be concerned that further examination of Olds on the subject could result in much more incriminating testimony that Appellant had a gun on the day of the murder or that she saw him with the gun that was found in the house.

In any event, even if the other requirements of ineffective assistance of counsel were met with respect to this claim, Appellant cannot show prejudice. As discussed above, the testimony that trial counsel elicited was only that Appellant had some time in the past had a gun in his possession. The mere fact that Appellant had an unidentified gun in his possession at some point unconnected to the crime is minor in comparison to the other evidence at trial. As discussed above, the evidence incriminating Appellant not only included White's testimony, but unimpeached evidence that Appellant left the house with White just before the murder and returned right after, that his clothes had gunshot residue on them, and the murder weapon was found in the house where he was staying and did not belong to anyone else in the house.

Moreover, to the extent that Olds' testimony that Appellant had previously possessed a gun was incriminating, it was duplicative of other testimony at trial that Appellant had possessed a gun in the past. The mother of Appellant's child testified that she saw Appellant with a gun less than a year before the murder and testified that she believed that the gun that he had was the gun found by the police in the house where he was staying. *Id.* at 372-74. Given the other much more incriminating evidence at trial and the cumulative nature of the testimony in question, it cannot be said that there is any reasonable probability that, but for trial counsel's elicitation of Olds' testimony concerning Appellant's past possession of a gun, the result of Appellant's trial would have been different.

For the foregoing reasons, we conclude that Appellant's claims of ineffective assistance of counsel are without merit. Accordingly, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/02/2023